**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 10/23/96**

**TENTH CIRCUIT**

---

JOYCE WILSON, Individually, as
executrix of the estate of Datton Wilson,
Jr., and as natural guardian and next friend
of the minor child, Natalie J. Wilson;
ANTHONY D. WILSON; ANITA D.
WILSON; DATTON WILSON, III;
CRYSTAL L. JOHNSON; and KASHA
C. WILSON,

      Plaintiffs-Appellants,

v.

LUTHER DONALD MEEKS;
TIMOTHY JOHN STOCK; BRUCE K.
POWERS; LANON THOMPSON;
DEBBIE MANN; J. EARL KITCHINGS;
CITY OF HAYSVILLE, a municipal
corporation; and JOHN COLEMAN,

      Defendants-Appellees.

Nos. 95-3390 and 95-3397

---

Appeal from the United States District Court
For the District of Kansas
D.C. No. 91-CV-1504-PFK

---

Jerry L. Berg, Law Offices of Jerry L. Berg, P.A., Wichita, Kansas, for Plaintiffs-Appellants.

Stephen E. Robison (David G. Seely with him on the briefs), Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, for Defendant-Appellee Luther Donald Meeks.

Alan L. Rupe, Morrison & Hecker L.L.P., Wichita, Kansas, for Defendants-Appellees.

_____

Before **PORFILIO**, **TACHA**, and **BRORBY**, Circuit Judges.

_____

**PORFILIO**, Circuit Judge.

_____

This appeal represents the second time this case is before us. Plaintiffs, Datton Wilson, Jr.'s estate and the surviving members of his family, brought this lawsuit pursuant to 42 U.S.C. § 1983 with pendent state law claims alleging nineteen separate causes of action arising from the shooting death of Mr. Wilson during a confrontation with the Haysville Police Department on December 7, 1990. In the first appeal, we held the individual police officers were entitled to qualified immunity on plaintiffs' federal claims. *Wilson v. Meeks*, 52 F.3d 1547 (10th Cir. 1995) (*Wilson I*). On remand, the district court granted summary judgment in favor of the City of Haysville and the individual defendants on the remainder of plaintiffs' claims. Plaintiffs now appeal, and we affirm.

The basic facts are described in detail in this court's original opinion and need not be repeated here. *Wilson I* at 1549-51. Suffice that the first appeal established the qualified immunity of the individual police officers from all of plaintiffs' federal claims.

On remand, the district court informed both parties, "in the face of the circuit court's findings and directives, it was assumed here [by the court] that this case was over; that the remaining claims were without merit and should be timely dismissed. Not so, said plaintiffs counsel." *Wilson v. Meeks*, No. 91-1504-PFK, 1995 WL 643834, at *2 (D. Kan. Oct. 12, 1995). As a result of the plaintiffs' position, the court suggested the individual defendants and the City of Haysville (defendants) renew their motions for summary judgment on all the remaining claims. After holding a hearing and considering both parties' voluminous filings, the court granted defendants' motions.

On appeal, plaintiffs raise three issues. First, plaintiffs argue this court's earlier decision was made without appellate jurisdiction and is therefore either void or voidable. Second, they assert the district court's grant of summary judgment on the pendent state claims was inappropriate. Third, plaintiffs contend the City of Haysville should be held liable for the combined acts and omissions of its employees despite our conclusion the individual defendants were entitled to qualified immunity.

Plaintiffs argue *Johnson v. Jones*, ___ U.S. ___, 115 S.Ct. 2151 (1995), eliminated this court's appellate jurisdiction to consider defendants' initial appeal of the district court's disposition of the qualified immunity issue. They maintain we lacked

jurisdiction to issue our April 20, 1995 opinion and should have so concluded upon consideration of plaintiffs' petition for rehearing, which was not finally resolved until after the Court's issuance of *Johnson*. Plaintiffs maintain defendants' appeal involved questions of "evidence sufficiency" and, therefore, appellate jurisdiction was eliminated by *Johnson*. *Id.* at 2159; *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 700 (10th Cir. 1995). They contend upon remand the district court incorrectly denied their collateral attack on this court's assumption of jurisdiction in *Wilson I.*

However, defendants correctly guide us to analyze this issue under the doctrine of the law of the case. "The law of the case is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same cases." *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1536 n. 4 (10th Cir. 1995) (citing *Arizona v. California*, 460 U.S. 605, 618-19 (1983)). The doctrine is considered only a rule of practice and is not a limit on a court's power or authority. *Id.* Over time, three circumstances have evolved justifying a departure from that doctrine:

> [T]he circumstances justifying a departure from the law of the case are narrow. The most widely quoted statement is by former Tenth Circuit Chief Judge Orie Phillips, sitting in another circuit, that the law of the case must be followed "unless the evidence on a subsequent trial was substantially different, <u>controlling authority has since made a contrary decision of the law applicable to such issues,</u> or the decision was clearly erroneous and would work a manifest injustice.

***United States v. Monsisvais***, 946 F.2d 114, 117 (10th Cir. 1991) (quoting ***White v. Murtha***, 377 F.2d 428, 432 (5th Cir. 1967)) (emphasis added); *see also **Major v. Benton***, 647 F.2d 110, 112 (10th Cir. 1981).

Plaintiffs argue ***Johnson***, however, represents an intervening controlling change in the applicable law that would obviate the doctrine of the law of the case. In ***Johnson***, the Court revisited the issue whether defendants can immediately appeal under 28 U.S.C. § 1291 a district court's fact-related determination denying qualified immunity based on the pretrial record. ***Id.*** at 2153. The Court held "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." ***Id.*** at 2159. In so holding, the Court framed its inquiry narrowly at the outset by explicitly noting, "[t]he order in question resolved a *fact*-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." ***Id.*** at 2153.

Subsequently, the Court has clarified the extent and impact of ***Johnson's*** reach. In ***Behrens v. Pelletier***, ___ U.S. ___, 116 S.Ct. 834, 842 (1996), the Court stated:

> [R]espondent asserts that appeal of denial of the summary-judgment motion is not available because the denial rested on the ground that "[m]aterial issues of fact remain." This, he contends, renders the decision unappealable under last Term's decision in ***Johnson v. Jones***, 515 U.S., at ____, 115 S.Ct. at 2156-2157. That is a misreading of the case. *Every* denial of summary judgment ultimately rests upon a determination that there are controverted issues of material fact, see Fed. R. Civ. Proc. 56, and ***Johnson*** surely does not mean that *every* denial of summary judgment is

nonappealable. ***Johnson*** held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under ***Cohen*** and ***Mitchell***. *See* 515 U.S. at ___, 115 S.Ct. at 2156-2157. ***Johnson*** reaffirmed that summary-judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, ***id.*** at ___, 115 S.Ct. at 2158-- typically, the issue whether the federal right allegedly infringed was "clearly established[.]"

(emphases in original).

Since ***Johnson***, this court has applied the new jurisdictional rule on only four occasions. In ***Sevier v. City of Lawrence, Kan.***, 60 F.3d 695 (10th Cir. 1995), we concluded we lacked jurisdiction under ***Johnson*** to review the district court's disposition of qualified immunity explaining, "we remain without jurisdiction to review the court's finding that there existed genuine issues of disputed facts that precluded the entry of summary judgment." ***Id.*** at 701. In ***Mick v. Brewer***, 76 F.3d 1127 (10th Cir. 1996), applying ***Johnson*** and ***Sevier***, we concluded we possessed jurisdiction to review the district court's legal determination of what constituted clearly established law on plaintiff's excessive force and failure to intervene claims but lacked jurisdiction to review the district court's ruling genuine issues of material fact precluded summary judgment. ***Id.*** at 1133. As a result, we proceeded to analyze only part of the defendants-appellants' appeal. ***Id.*** at 1134-37. In ***Myers v. Oklahoma County Bd. of County Comm'rs***, 80 F.3d 421 (10th Cir. 1996), *petition for cert. filed,* 65 U.S.L.W. 3017 (U.S. June 27, 1996) (No.

95-2091)*,* we concluded we did not have jurisdiction to hear an appeal when "the district court denied summary judgment to the individual defendants on their qualified immunity defense on the sole basis that 'there [was] a genuine issue for trial regarding the reasonableness of defendants' conduct.'" *Id.* at 424 (quoting the district court's order). Finally, in ***Shinault v. Cleveland County Bd. of County Comm'rs***, 82 F.3d 367 (10th Cir. 1996), we held we lacked jurisdiction under ***Johnson*** to review the district court's conclusion there was a genuine issue of material fact concerning the motivation behind Mr. Shinault's termination by the Board. "[T]he district court found that a genuine issue of material fact existed as to whether Skinner fired Shinault for engaging in constitutionally protected political activities, and under ***Johnson***, that finding is unreviewable." *Id.* at 370.

Several other courts of appeal have distinguished ***Johnson*** in particular cases. ***Jemmott v. Coughlin***, 85 F.3d 61, 66 (2d Cir. 1996) ("For the purpose of this appeal, however, the defendants are not contesting the sufficiency of plaintiff's proof, or the district court's ruling that disputed issues of fact require the denial of their summary judgment motion. Instead, they argue that even if plaintiff's allegations are accepted as true, no clearly established constitutional right was violated."); ***Heidmann v. Rother***, 84 F.3d 1021, 1027 (8th Cir. 1996) ("We, therefore, find it necessary to review the record and consider the legal context of plaintiffs' constitutional and statutory claims, in order to determine whether this interlocutory appeal raises abstract issues of law relating to

- 7 -

qualified immunity over which we presently have jurisdiction.  We hold that it does.");

*Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996) ("Unlike the present appeal, the

defendants in *Johnson* did not contend that when taking *all* of the plaintiff's factual

allegations as true no violation of a clearly established right was shown."); *Dolihite v.*

*Maughon*, 74 F.3d 1027, 1034 n. 3 (11th Cir. 1996) ("Unlike *Johnson* . . . the primary

argument of each appealing public official in this case is that a reasonable public official

could have believed that his or her actions were lawful, in light of clearly established law

and the information possessed by each official.  This argument raises the core qualified

immunity issue and is, therefore, immediately appealable") (citations omitted), *cert.*

*denied* ___ S.Ct.. ___, 1996 WL 442721, 65 U.S.L.W. 3110 (U.S. Oct. 7, 1996) (No. 96-

183); *Sanderfer v. Nichols*, 62 F.3d 151, 153 n.2 (6th Cir. 1995) ("[T]his order is

immediately reviewable because, as discussed below, the plaintiff's version of events,

regardless of the sufficiency of the supporting evidence, does not state a claim for such a

[constitutional] violation.").

Applying these principles to our disposition in *Wilson I*, we now conclude we had

appellate jurisdiction under *Johnson*.  We analyzed plaintiffs' claims for failure to render

medical aid and cover-up in terms of whether defendants violated a clearly established

constitutional duty.  *Wilson I* at 1554-56 (medical aid) and at 1556-58 (cover-up).  These

were pure issues of law that were not dependent upon the resolution of any facts.

However, we also considered whether plaintiffs' excessive force claim presented a

genuine issue of material fact precluding summary judgment. *Id.* at 1553. Standing alone, this inquiry could be affected by *Johnson*; however, because the other legal issues present in *Wilson I* were reviewable, we would have had the option of exercising our pendent appellate jurisdiction to also review the district court's disposition of the excessive force claim. *See Johnson*, 115 S.Ct. at 2159 (assuming arguendo potential availability of pendent appellate jurisdiction in a similar context); *Shinault*, 82 F.3d at 370 (suggesting availability of pendent appellate jurisdiction); *but see Mick*, 76 F.3d at 1134 (not addressing possibility of pendent appellate jurisdiction in a case where the court concluded it only possessed the jurisdiction to hear part of the appeal).

Because this court had appellate jurisdiction to decide *Wilson I* under *Johnson*, we hold that *Johnson* does not represent an intervening change in the law making the exception to the law of the case doctrine inapplicable. Accordingly, *Wilson I* governs this second appeal.

Plaintiffs argue the district court erred by granting summary judgment on their pendent Kansas state law claims of assault and battery, false arrest, fraud, and wrongful death against various defendants. They advance the novel theory that it was inappropriate for the district court to rely on determinations made by this court in *Wilson I* to resolve these claims. Plaintiffs maintain under Kansas law genuine issues of material fact existed precluding summary judgment on each of their pendent claims.

First, arguing they established a false arrest claim against Officer Meeks, they assert a factual question remains concerning whether Officer Meeks was the initial aggressor in the incident leading to Mr. Wilson's death, forfeiting his right to self-defense. Second, plaintiffs contend the district court improperly granted summary judgment on their pendent state wrongful death claim, contending the police officers' failure to render first aid amounted to negligence under Kansas law. Third, plaintiffs argue the district court erred by granting summary judgment on their fraud claim, maintaining fraud and fraud by silence do not have to rise to the level of a constitutional violation to be actionable under Kansas law.

We review summary judgment dispositions de novo, applying Fed. R. Civ. P. 56 in identical fashion as did the district court. *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 796 (10th Cir. 1993). On appeal, this court considers all the evidence in the light most favorable to the non-moving party. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Appellate consideration includes drawing all reasonable inferences from the available underlying facts. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Summary judgment is appropriate only if there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The district court's disposition of these issues was correct. The court determined the assault and battery claims against Officer Meeks were precluded by our holding his

actions were objectively reasonable. It found Kansas' law of self-defense includes a two-part test requiring proof of both subjective belief in the need to defend oneself and objective reasonableness. Thus our conclusion the officer's actions were objectively reasonable in terms of the excessive force claim supported the objective prong, and Officer Meeks' testimony he was in fear of Mr. Wilson's firearm met the subjective inquiry.

In Kansas, "[a]ssault is defined as 'an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary.'" *Vetter v. Morgan*, 913 P.2d 1200, 1203 (Kan. Ct. App. 1995) (quoting *Taiwo v. Vu*, 822 P.2d 1024, 1027 (Kan. 1991)). The elements of battery include touching or striking another person with the intent of bringing about either a contact, or an apprehension of contact that is harmful and offensive. *Williams v. Kearbey*, 775 P.2d 670, 674 (Kan. Ct. App. 1989). One may defend against an assault and battery by raising the affirmative defense of self-defense. *Sanders v. Sitton*, 292 P.2d 1099, 1101 (Kan. 1956). Kansas has codified these principles of self-defense in Kan. Stat. Ann.§ 21-3211 (1995), which provides:

> A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force.

The Kansas Supreme Court has explained the two-prong test contemplated by the statute:

- 11 -

The first prong is subjective and requires a showing that the defendant sincerely and honestly believed it necessary to kill to defend himself. The second prong is an objective standard and requires a showing that a reasonable person in the defendant's circumstances would have perceived self-defense as necessary.

*State v. Tyler*, 840 P.2d 413, 422 (Kan. 1992); *see also State v. Stewart*, 763 P.2d 572 (Kan. 1988).

Relying principally on *Lewis v. Marmon*, 655 P.2d 953 (Kan. Ct. App. 1982), plaintiffs assert a jury must determine whether Officer Meeks' actions met the objective reasonable person standard. In *Lewis*, the Kansas Court of Appeals noted the general rule in this inquiry represents a factual question to be determined by the jury. *Id.* at 956. However, the court later did not foreclose the possibility of summary judgment being appropriate in some circumstances. "Summary judgment is an exception to this rule, and has been granted in only a very few cases, such as where the officer had prior knowledge that his adversary was armed and dangerous, or where the officer was confronted by an armed assailant." *Id.* at 957.

In *Wilson I*, this court concluded Officer Meeks' deadly force was in response to Mr. Wilson's pointing his firearm in the officer's general direction. In short, Officer Meeks acted in response to an armed assailant. Plaintiffs attempt to avoid this conclusion by asserting a genuine issue of material fact exists about whether Officer Wilson was the initial aggressor in the incident. This argument is a transparent variation on the

- 12 -

"surrender position" argument advanced in *Wilson I*.[1]  Thus, our holding of objective

reasonableness subsumes Officer Meeks responded to Mr. Wilson's action, and Mr.

Wilson, not Officer Meeks, was the aggressor here.  There simply is no remaining

genuine issue of material fact relating to this claim.

The district court held plaintiffs' false arrest claim against Officer Meeks must fall

for identical reasons as their assault and battery claim.  That holding is correct.  If Officer

Meeks' actions were reasonable when he used deadly force against Mr. Wilson, they were

also reasonable when he initially confronted him.

Based on our holding police officers have no clearly established constitutional duty

to render medical assistance and the conclusion the officers' actions were reasonable

under the circumstances*, Wilson I* at 1556, the district court concluded  defendants'

failure to provide medical aid to Mr. Wilson did not support a wrongful death claim.  It

recognized our holding on the issue is tantamount to saying the officers had no duty to

provide aid beyond that given in this case, thus obviating any potential finding of

negligence which would be a necessary prerequisite for a wrongful death claim.

Hence, the district court concluded plaintiffs' fraud claim was simply a state law

analogue to their federal cover-up claim and is precluded by our holding plaintiffs'

allegations of a cover-up were without merit.  In *Slaymaker v. Westgate State Bank*, 739

---

[1]Plaintiffs had contended Mr. Wilson approached the officer in a non-threatening "surrender position."

P.2d 444 (Kan. 1987), the Kansas Supreme Court described the elements necessary to

prove fraud.

> Actionable fraud includes an untrue statement of material fact,
> known to be untrue by the person making it, made with the intent to deceive
> or recklessly made with disregard for its truthfulness, where another party
> justifiably relies upon the statement and acts to his injury. The injured party
> must have been deceived by, and have relied upon, the defendant's
> misrepresentations in order to recover damages for fraud. The injured
> party's reliance on a fraudulent misrepresentation must be reasonable,
> justifiable and detrimental.

*Id.* at 450 (citations and quotation marks omitted); *Nordstrom v. Miller*, 605 P.2d 545,

551-52 (Kan. 1980). Additionally, a claim of fraud may be established by concealment or

silence.

> To establish fraud by silence, the plaintiff must show by clear and
> convincing evidence the following elements: (1) that defendant had
> knowledge of material facts which plaintiff did not have and which plaintiff
> could not have discovered by the exercise of reasonable diligence; (2) that
> defendant was under an obligation to communicate the material facts to the
> plaintiff; (3) that defendant intentionally failed to communicate to plaintiff
> the material facts; (4) that plaintiff justifiably relied on defendant to
> communicate the material facts to plaintiff; and (5) that plaintiff sustained
> damages as a result of defendant's failure to communicate the material facts
> to the plaintiff.

*OMI Holdings, Inc. v. Howell*, 918 P.2d 1274 (Kan. 1996) (quoting *Lesser v. Neosho

County Community College*, 741 F. Supp. 854, 863 (D. Kan. 1990)). The common

element of these two types of fraud is either a specific intent to deceive or at least

recklessness leading to the deception. In analyzing plaintiffs' cover-up claim in *Wilson I*,

we concluded there was no basis for the allegation the police engaged in a conspiracy or

- 14 -

cover-up to prevent plaintiffs from discovering critical facts concerning the shooting. This eliminates any possibility defendants intended to deceive plaintiffs either by providing false information or failing to disclose material facts relevant to plaintiffs' investigation of the incident and forecloses the conclusion defendants acted recklessly to deceive plaintiffs. Consequently, the district court did not err in holding plaintiffs' fraud claim must fail.

Plaintiffs argue the district court erred in granting summary judgment for the City of Haysville on their municipal liability claims, contending the individual defendants' qualified immunity does not preclude a finding of municipal liability against the City. In ***Monell v. Department of Social Servs.,*** 436 U.S. 658 (1978), the Supreme Court declared municipalities and other local government entities were "persons" within the meaning of 42 U.S.C. § 1983. ***Id.*** at 690 (overruling ***Monroe v. Pape,*** 365 U.S. 167, 187 (1961)). However, in so doing, the Court explicitly rejected municipal liability based on either a respondeat superior or vicarious liability theory. Instead, municipalities may not be held liable "unless actions pursuant to official municipal policy of some nature caused a constitutional tort." ***Monell,*** 436 U.S. at 691.

The district court correctly concluded no municipal liability could be found in this case because there was no constitutional violation committed by any of the individual defendants. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." ***Hinton v. City of Elwood, Kan.***, 997 F.2d

774, 782 (10th Cir. 1993) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, *cert. denied*, 476 U.S. 1154 (1986)).

Plaintiffs make the broad assertion no finding of individual liability is necessary for a court to find a municipality liable for constitutional violations attributable to it. This assertion is blatantly inaccurate.

> When a finding of qualified immunity is predicated on the basis that the law is not clearly established, it is indeed correct that "there is nothing anomalous about allowing [a suit against a municipality] to proceed when immunity shields the defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred."
>
> An individual municipal officer may also be entitled to qualified immunity, however, because the officer's conduct did not violate the law.... In such a case, a finding of qualified immunity may preclude the imposition of any municipal liability.

*Hinton*, 997 F.2d at 783 (quoting *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 697 (10th Cir. 1988) (alterations in original)). Because qualified immunity in *Wilson I* was predicated on the conclusion no constitutional violation occurred, *Hinton* teaches the City of Haysville cannot be held liable in this case.

Finally, plaintiffs make a relatively incomprehensible argument that whether a constitutional violation occurred must be judged from Mr. Wilson's perspective and all the officers' actions and omissions must be taken into consideration in totality. Plaintiffs argue, even if none of the defendants violated the constitution individually, the possibility

still exists, and a jury must determine, whether their combined actions violated the constitution. There is a serious logical flaw in plaintiffs' syllogism.

We fail to comprehend exactly how no individual officer could violate Mr. Wilson's constitutional rights, but somehow collectively, all of them could. Plaintiffs cite no authority supporting this novel theory, and they do not otherwise elucidate. We are not persuaded.

**AFFIRMED**.