**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CYNTHIA MORTON MORREALE,

Plaintiff - Appellant,

v.

CRIPPLE CREEK, CITY OF, a
municipality; PAUL MATTYS, Officer,
in his capacity as an Officer for the City of
Cripple Creek and individually; and
EDWARD STAUFFER, in his official
capacity as an Officer for the City of
Cripple Creek,

Defendants - Appellees.

No. 96-1220

(D. Colorado)

(D.C. No. 94-Z-737)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

Cynthia Morton Morreale appeals the district court's dismissal of her 42 U.S.C.

§ 1983 action against the City of Cripple Creek, Colorado, and certain members of its

police department. She contends that the district court erred by 1) dismissing officers

Evelyn Stauffer and Beth Caddy for failure to obtain service; and 2) granting summary

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

judgment to the remaining defendants. For the reasons stated below, we affirm the district court's dismissal of officers Evelyn Stauffer and Beth Caddy, although on different grounds than those stated by the district court, and we affirm its summary judgment in favor of the remaining defendants.

## BACKGROUND

According to her deposition, on May 19, 1993, Morreale was a casual tourist driving with a friend through the mountain town of Cripple Creek, Colorado, when she entered law enforcement purgatory. Her descent began when police officer Mattys stopped her for running a stop sign. A standard computer check of Morreale's current Florida license revealed that her previous Colorado license had been suspended.[1] Mattys ordered Morreale out of her car, placed her under arrest, and advised her that he would take her to post bond. Appellee's App., Tab R at 19. Mattys then asked his assisting officer Caddy to pat Morreale down and to search her pouch according to standard policy.

---

[1]Morreale had moved from Colorado to Florida in 1992. While driving in Florida on her Colorado license, she received a moving violation citation. A few weeks later, she surrendered her Colorado license when she obtained a Florida license, and she paid the Florida ticket and a late penalty. However, in the interval, Colorado received notice of the unpaid ticket from Florida and entered a license suspension pursuant to the Interstate Compact. Although Morreale states that the Colorado suspension was outdated, she does not contend that Mattys lacked probable cause to arrest her. See Arizona v. Evans, ___ U.S. ___, 115 S. Ct. 1185, 1193-94 (1995) (noting that an officer does not violate the Fourth Amendment when he makes an arrest in reliance on erroneous computer information).

The pat down and search revealed no contraband or weapons. Mattys then handcuffed Morreale with her hands behind her back according to standard procedure, despite Morreale's request that she be handcuffed with her hands in front to avoid aggravating a prior shoulder injury. As part of the handcuffing procedure, Mattys verified that two fingers' space remained inside the handcuffs so that blood circulation would not be cut off, and he double locked the handcuffs so that they would not tighten down. He then ordered Morreale to get in the back seat of the police car for the fifteen to twenty minutes it took to verify that her passenger would be able to drive her car. Because the handcuffs hurt her wrists, Morreale asked to be allowed to stand outside until Mattys was ready to transport her, but Mattys refused. Mattys then drove Morreale two blocks to the Cripple Creek police department.

During the time she was handcuffed, Morreale complained that the handcuffs were digging into her wrists, but she complied with all Mattys's orders. She does not assert that Mattys pushed, shoved, or treated her roughly in any way.[2] However, due to the cramped positioning in the back seat, Morreale had to sit on her hands, which caused the handcuffs to press into and scratch her wrists and to bruise her buttocks. She alleges that she continued to complain of the pain in her wrists on the way to the police department,

---

[2]In fact, the record indicates that Mattys had very little physical or verbal contact with Morreale.

- 3 -

and Mattys' response was that she should not move around so much.[3]  Appellee's App., Tab V at 78.  She further states that she complained about the handcuffs's being too tight when she first arrived at the police department.  Id. at 92.  Apparently, however, she did not complain of shoulder pain while she was handcuffed.  Id. at 77-78.  As soon as they arrived at the police department, Mattys took Morreale to a holding cell and took off the handcuffs.  Approximately twenty minutes elapsed from the time Morreale was first handcuffed until the time the handcuffs were removed.

Morreale, who is a pianist, complains that as a result of being handcuffed and awkwardly positioned in the car, she suffered damage to her shoulder and to her radial nerve at the wrist.  That damage has prevented her from pursuing her professional and recreational piano playing.  Morreale makes no claim for any other physical damage or injury due to any other police conduct related to her arrest and detention.

According to standard booking procedure, Mattys ordered that Morreale be photographed and fingerprinted.  Mattys also required Morreale to empty her pockets and to give him the contents, together with her jewelry, her belt, and the shoelaces from her tennis shoes, and he informed her that she could post bail at the sheriff's department in Divide, Colorado.  Mattys denies Morreale informed him of her shoulder injury prior to the handcuffing, although he concedes that she asked to be handcuffed in front and told him that the handcuffs were uncomfortable.  Appellee's App., Tab R at 22, 37.  He

---

[3]Morreale states that she was not moving around.

- 4 -

further concedes that after they arrived at the police department, she complained of a prior injury, and somewhat later she complained of arm pain. At that time, he asked if she wanted medical attention, and she refused. Id. at 36.

Before transporting Morreale to Divide, the transport officer, Evelyn Stauffer, directed Morreale to the bathroom where, consistent with department policy, she ordered Morreale to change into a jail jumpsuit. Stauffer testified that she ordered Morreale to take off her outer clothes. Morreale's version is that Stauffer's actual order was "to take my clothes off." In any event, as it turned out, Morreale was not wearing undergarments, so her compliance left her naked to Stauffer's view as she waited to receive Morreale's clothes. Appellee's App., Tab V at 89. Stauffer allegedly then ordered Morreale to turn around, and looked her "up and down and all over," but she did not touch Morreale or conduct any other inspection. Id. at 89, 143. Stauffer gave Morreale the jumpsuit to put on. Once Morreale put on the jumpsuit, in accordance with written policy governing the transport of arrestees, Stauffer shackled her in a belly belt with handcuffs and also in separate leg irons. By that time, Morreale had been detained at the Cripple Creek police department about one hour and fifteen minutes.

The drive to Divide, Colorado, took approximately twenty to twenty-five minutes. Morreale states that during the trip she complained to Stauffer that her hand hurt from Mattys' original handcuffing, but she did not complain about the handcuffs or restraints used during the transport to Divide.

Upon her arrival at the sheriff's department in Divide, officers unshackled Morreale and proceeded with intake paperwork. At that time, Morreale continued to complain of shoulder and arm pain, but indicated she would get medical attention later. Morreale was then placed in a holding cell for two to three hours while her passenger, who had met her in Divide, attempted to post bond for her. Unfortunately, the passenger encountered several obstacles: The only bondsperson would not give a bond to an out-of-state arrestee and would not accept either Morreale's or the passenger's credit cards as security. Finally, the passenger was able to pay $300 cash to get Morreale released. According to Morreale, the entire episode from arrest to release lasted about four to five hours.

Morreale subsequently filed this civil rights suit claiming, *inter alia*, that Mattys used excessive force to arrest her and that certain Cripple Creek policies were unconstitutional on their face and as applied. Morreale initially named the City of Cripple Creek, Police Chief Edward Stauffer, Officer Mattys, Jane Doe, and John Doe as defendants. An amended joint answer was filed by counsel ("primary defense counsel") who represented the city and the named defendants in their official capacities,[4] and by co-counsel who had entered a separate appearance for Mattys in his individual capacity. Appellee's App., Tab E. Upon determining the identity of officers Evelyn Stauffer and Beth Caddy, Morreale moved to amend her complaint to name them as defendants. The

---

[4]Chief Stauffer was sued in his official capacity only.

- 6 -

court granted the motion by minute order on September 16, 1994, and on the same date, mailed notice of its action to all counsel. Appellee's App., Tab G. Also on September 16, 1994, Morreale's counsel mailed copies of the motion and amended complaint to primary defense counsel, referred to waivers of service for officers Caddy and Stauffer which he had previously sent, and asked counsel to advise him of any problems. Appellant's App., Tab 31.

Apparently, primary defense counsel had not received, or was unaware of, the correspondence from the court and Morreale's counsel when she wrote as follows in a letter dated September 22, 1994: "Please forward me a copy of the Amended Complaint and Motion to Amend to my office. If the court grants your Motion to Amend, I have been authorized to accept service on behalf of Officer Caddy and Officer Stauffer." Letter from Jennifer Bisset, Esq., to Dennis Hartley, Esq., Appellee's App., Tab H.[5] The record reveals no further correspondence regarding acceptance or waiver of service. On October 7, 1994, primary defense counsel and co-counsel filed a joint answer to the amended complaint. Id., Tab I. Although the heading lists the newly named defendants, the paragraph which prefaces the answer specifically lists only the originally named defendants. Id.

---

[5]Primary defense counsel states that this letter advised Morreale's counsel of a problem with the form of waivers previously sent. Appellee's Br. at 16. Our review of the letter indicates no such advice or mention of the waivers.

At Morreale's deposition on October 18, 1994, primary defense counsel identified herself on the record as follows: "Ms. Morreale, I'm Jennifer Bisset. I represent Officer Mattys, Officer Caddy, Officer Stauffer and Chief Stauffer in this action, as well as the City of Cripple Creek." Id., Tab V at 119. Additionally, on February 15, 1995, officers Caddy and Stauffer appeared at their noticed depositions. The certified reporter began each deposition with a full case heading which included Caddy and Stauffer. Pursuant to Fed. R. Civ. P. 30(b)(4), the certified reporter then included a statement on the record that identified Caddy and Stauffer respectively as "defendant herein," and further listed appearances of co-counsel for Mattys, and of Jennifer E. Bisset "for all other defendants." Appellee's App., Tabs S at 1-2, U at 1-2. Moreover, defense counsel filed a joint motion for summary judgment dated April 3, 1995, whose heading lists all named defendants, and whose prefacing paragraph indicates that the motion is being made by "Defendants" without any limiting specification or naming. Appellant's App., Tab 9. Further, one of the incorporated briefs in support of the motion argues on the merits that officers Caddy and Stauffer are entitled to qualified immunity. Appellee's App., Tab L at 17-19. Finally, the prefacing paragraph of the pretrial order which all attorneys drafted and signed prior to the pretrial conference, states that defendants, without any limiting specification or naming, appeared by primary defense counsel and co-counsel. Appellant's App., Tab 10.

With prearranged court approval, Morreale's counsel did not appear at the pretrial conference on August 11, 1995.[6] The transcript of the pretrial conference indicates that primary defense counsel entered her general appearance on the record "on behalf of Defendants," and co-counsel also specifically stated his appearance on behalf of Caddy. Appellant's App., Tab 33 at 2. Nonetheless, primary defense counsel then represented that officers Caddy and Stauffer had never been served and that no answer had been filed on their behalf, and she orally moved for their dismissal on that basis. The magistrate judge indicated that he would recommend dismissing those defendants for lack of service. When Morreale's counsel learned of the recommendation for dismissal, he moved for reconsideration and filed timely objections, noting primary defense counsel's acceptance of service and her representation of the defendants throughout the proceedings. Primary defense counsel responded that she was never provided proper waivers to sign,[7] and she further represented that "[a]t no time has undersigned counsel entered an appearance or accepted jurisdiction of the court on behalf of Beth Caddy or Evelyn Stauffer." Appellee's App., Tab N at ¶ 10. The motion to reconsider was denied. The district court

---

[6]Counsel was at a CLE seminar and had arranged to call in from the seminar. However, long lines to the only available phones prevented him from calling until after the short pretrial conference was concluded. Appellant's App., Tab 12 at ¶ 1.

[7]Counsel contends that the waivers should not have been drafted for the defendants' signatures, but should have been drafted for her signature as attorney for defendants.

- 9 -

adopted the magistrate judge's recommendation, and a further motion to reconsider which noted counsel's representation and defendants' appearances was denied.

Thereafter, the magistrate judge considered the defendants' earlier motion for summary judgment and recommended the dismissal of the remaining defendants based on lack of personal participation and qualified immunity. The district court adopted the recommendation, and Morreale brought this appeal.


**DISCUSSION**

A.    Dismissal for Lack of Service

We review a dismissal for lack of service for abuse of discretion. Espinoza v. United States, 52 F.3d 838, 840 (10th Cir. 1995). The district court found that officers Caddy and Stauffer had not been served within 120 days after the filing of the amended complaint as required by Fed. R. Civ. P. 4(m), and therefore dismissed the action as to them.

As noted, the record shows that primary defense counsel made numerous appearances on behalf of all defendants and specifically stated her appearance and representation of officers Caddy and Stauffer in this action on the record of Morreale's deposition. The record also shows that the named officers participated in the proceedings by making voluntary appearances as "defendants" at their noticed depositions and by submitting summary judgment arguments on the merits in their behalf. It is well settled

that lack of personal jurisdiction is a privileged defense that can be waived "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct," Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 168, (1939); see also Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 176 (10th Cir. 1992) (noting that "'defendant may [not] halfway appear in a case, giving . . . the impression that he has been served, and [later] pull failure of service out of the hat like a rabbit'" (quoting Broadcast Music, Inc. v. MTS Enters., Inc., 811 F.2d 278, 281 (5th Cir. 1987))); Ziegler v. Akin, 261 F.2d 88, 92 (10th Cir. 1958) (holding that voluntary appearance cures any defect in service).

Accordingly, because the defendants made appearances in their own behalf and through counsel, the district court abused its discretion in dismissing the action. However, inasmuch as both defendants should be dismissed on substantive grounds, no remand is necessary.[8]

B.      Summary Judgment

We review de novo the grant of summary judgment, applying the same legal standards used by the district court under Fed. R. Civ. P. 56(c), and viewing the record in

---

[8]Morreale's counsel has conceded that Caddy should be dismissed for substantive reasons.  Appellee's App., Tab M at 12 ("[C]ounsel for the Plaintiff would agree that Officer Beth Caddy should be dismissed from this lawsuit, because she did not participate in the unconstitutional conduct.")  We agree.  Moreover, as discussed infra, Morreale has failed to allege facts which constitute a constitutional violation as to Evelyn Stauffer, so she also should be dismissed on substantive grounds.

the light most favorable to the nonmovant.  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  If there is no disputed issue of material fact, we determine if the district court correctly applied the substantive law.

    1.  Summary Judgment in Favor of Officer Mattys

Morreale claims that Mattys violated the Fourth Amendment by using excessive force in handcuffing her.  In the proceedings below, Mattys moved for summary judgment, asserting that he was protected from suit by qualified immunity.

Once a defendant official raises a qualified immunity defense, the plaintiff must show that the official's conduct violated the law, and that the law was clearly established when the alleged violation occurred.  Hinton v. City of Elwood,  997 F.2d 774, 779 (10th Cir. 1993).  "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  If the plaintiff has not alleged facts which would constitute a constitutional violation, the defendant is entitled to summary judgment.  Id. ("Decision of this purely legal question permits courts expeditiously to weed out [unwarranted] suits.")

We apply Fourth Amendment standards of objective reasonableness to analyze constitutional claims of excessive force.  Graham v. Connor, 490 U.S. 386, 396-97 (1989) Thus, we inquire whether the officer's actions were "objectively reasonable" in light of

the facts and circumstances confronting him, without regard to their underlying intent or motivation.  Id.; Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir. 1991).  In assessing the reasonableness of force used by a police officer making an arrest, we consider the severity of the crime, whether the subject posed an immediate threat to the officer's safety, and whether the subject was resisting arrest.  Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995) ("Wilson I").

Attempting to demonstrate that Mattys used excessive force, Morreale argues that she was a minor traffic offender who presented no threat or resistance.  Therefore, she contends that, in light of her stated injury and repeated complaints that the handcuffs were digging into her wrists, Mattys' handcuffing her behind the back and requiring her to remain handcuffed in the cramped backseat of the patrol car for twenty minutes constituted excessive force under the circumstances.[9]  For purposes of summary judgment, we accept Morreale's version of events.  Significantly, however, Morreale does not contend that Mattys used force which was substantial or abusive, nor does she dispute Mattys' claim that he took steps to assure that the handcuffs were not too tight.  Lacking such allegations, she has made no claim for excessive force.[10]  See Hannula v. City of

---

[9]The Cripple Creek policy provides exceptions to standard handcuffing procedure if the arrestee has an injury or physical condition that does not permit handcuffing in back.  Appellant's App., Tab 26 at 236.

[10]In Hannula v. City of Lakewood, 907 F.2d 129 (10th Cir. 1990), we noted that the plaintiff had presented "no evidence of contusion, lacerations or damage to the bones or nerves of her wrists."  Hannula, 907 F.2d at 132.  We also noted that Hannula had "not

(continued...)

Lakewood, 907 F.2d 129, 132 (10th Cir. 1990); cf. Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (denying qualified immunity for abusive handcuffing tight enough to cause bruising that lasted for several weeks, combined with officer's refusal to loosen handcuffs when arrestee complained of pain).

Accordingly, while we do not applaud the type of police insensitivity which Morreale alleges, those allegations standing alone do not establish a constitutional violation in this circuit.[11]  Therefore, the district court did not err in dismissing Morreale's action as to Mattys.

2.      Summary Judgment as to Certain Policies Implemented by Chief Edward Stauffer and the City of Cripple Creek

Chief Stauffer was not present when the alleged constitutional violations occurred, and he has been joined solely because of his supervisory role.  A supervisor cannot be held liable under § 1983 on a respondeat superior theory.  Monell v. Department of Social Serv., 436 U.S. 658, 691-95 (1978); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir.

---

[10](...continued)
proven that the amount of force was substantial." Id.  In concluding that Hannula had not established excessive force, we considered the weight of cases which establish that "while loosening tight handcuffs may be the most compassionate action, the failure to do so does not rise to a clearly established constitutional violation." Id.

[11] But see Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir.1993).  In a situation similar to Morreale's, Walton upheld the denial of qualified immunity to an officer who handcuffed a woman with a shoulder injury behind her back.  Although the officer did not apply abusive force in effecting the handcuffing procedure, the Sixth Circuit found that there was a dispute of fact whether the officer knew of the arrestee's injury and, hence, whether he used excessive force under the circumstances.

1996) ("Wilson II"). In order to establish Chief Stauffer's liability, Morreale must establish some "affirmative link" between the alleged constitutional violation and personal control by Chief Stauffer. Gagan v. Norton, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994) (citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). Likewise, a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation. Board of the County Comm'rs of Bryant County, Okla. v. Brown, No. 95-1100, 1997 WL 201995, at *4 (U.S. Apr. 28, 1997) (citing Monell, 336 U.S. at 694). That is, a municipality has § 1983 liability only if the constitutional injury results from action pursuant to its policy or custom, or from the municipality's "deliberate indifference" as to known or obvious consequences of its actions. Id. at **4, 6 (citing Canton v. Harris, 489 U.S. 378, 388 (1989)). In any case, we must first consider whether the plaintiff has alleged facts which constitute a constitutional violation. Cf. Siegert, 500 U.S. at 232.

      a.     Strip Search

Morreale alleges that her Fourth Amendment rights were violated when she was "strip searched" pursuant to the following Cripple Creek police department policy, which Chief Stauffer drafted:

> After being searched and prior to being placed in the holding cell, ALL prisoners will be stripped of clothing, down to their undergarments, and will be placed in a CCPD prisoner jumpsuit. This will prevent prisoners from bringing any items into the cell area without the knowledge of the arresting officer.

Appellee's App., Tab Q at 3.

The record indicates that Morreale was arrested on a minor traffic violation, and that she was never to be placed in a general jail population. We agree with Morreale that any policy mandating a strip search in those circumstances is clearly unconstitutional under the Fourth Amendment.[12] Chapman v. Nichols, 989 F.2d 393, 399 (10th Cir. 1993). In striking down such searches, we have applied the following balancing test:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires *a balancing of the need for the particular search against the invasion of personal rights that the search entails*. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 395 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)) (emphasis added in Chapman). Thus, we have noted the indisputable "feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection." Id. at 396 (quoting Thompson v. City of Los Angeles, 885 F.2d 1439, 1446 (9th Cir. 1989)). Moreover, we have observed that "jails can meet the minimal security concerns they may have with minor offenders by means of a 'less intrusive pat-down search.'" Id. at 397 (quoting Jones v. Edwards, 770 F.2d 739, 742 (8th Cir. 1985)). Concluding that "a strip search is an invasion of personal rights of the first magnitude,"

---

[12]"Courts have consistently recognized a distinction between detainees awaiting bail and those entering the jail population when evaluating the necessity of a strip search under constitutional standards." Cottrell v. Kaysville City, Utah, 994 F.2d 730, 735 (10th Cir. 1993).

we have found that policies which mandate blanket strip searches of all minor traffic offenders are constitutionally offensive, even if no body cavity search is involved. "[N]o objectively reasonable person would believe that a strip search of a minor offense detainee would be constitutional simply because the search did not involve a more obtrusive viewing of the detainee's naked body." Id. at 398. However, all our previous holdings speak to policies which require arrestees to completely disrobe; they do not reach the situation in which the arrestee retains his or her undergarments.

Thus, we have never considered a practice requiring detainees to disrobe to their undergarments in order to change into jail garb for transport and transfer to another facility, nor can we find other authority on the issue. While we appreciate the insult that persons who are arrested on minor traffic charges may feel at being subjected to such a policy, obviously, the invasion of personal rights in such cases is not as extreme as the invasion entailed in a strip search policy which requires the detainee to strip naked. Furthermore, we cannot categorically say that pat down searches are the only course of action which the Constitution permits for meeting security concerns. In this case, Morreale was taken to a private room, accompanied by an officer of the same sex, under a policy which provided that she would take off her outer clothes only. Balancing the security need against the invasion of personal rights that the Cripple Creek policy entails, we cannot conclude that it violates the Constitution.

b.      Shackling

In a conclusory claim, Morreale contends that the policy mandating that she be hand and foot shackled for transport violated her constitutional rights. The Cripple Creek shackling policy, which Chief Stauffer drafted, provides that the transport person shall "search person/s before leaving holding cell [and] belly cuff and leg cuff" them for transport. Appellee's App., Tab Q at 4.

We have never addressed whether it is constitutionally permissible, for purposes of transport, to fully shackle persons arrested on minor traffic offenses, and we have been unable to locate any authority on the issue. Morreale summarily contends that her Fourth, Fifth and Fourteenth Amendment rights were violated by the policy, Appellant's Br. at 12, but she fails to distinguish or to elaborate the applicable standards under the cited amendments. In any event, we note that the standard applied to an excessive force claim arising from an arrest may not apply to this claim, since Morreale was a pretrial detainee at the time she was shackled. See, e.g., Graham, 490 U.S. at 395 n.10; United States v. Johnstone, 107 F.3d 200, 205 (3rd Cir. 1997); Weimer v. Schraeder, 952 F.2d 336, 340 (10th Cir. 1991). Regardless, whether we apply a Fourth or Fourteenth Amendment standard, we cannot conclude that the policy is either unreasonable or that it shocks the conscience or that it improperly imposes punishment. Thus, although we observe that

transport officers can be protected by lesser means,[13] the policy does not violate the Constitution.

Accordingly, because we conclude that the policies in question are constitutional, we affirm the district court's summary judgment dismissing the City of Cripple Creek and Chief Stauffer.

3.       Conduct of Evelyn Stauffer

Even if the policy requiring arrestees to change into jail garb is constitutional, Morreale argues that it was unconstitutionally applied to her.  Thus, she contends that Evelyn Stauffer did in fact strip search her.  Notably, however, Morreale does not claim that Evelyn Stauffer acted outside the parameters of the Cripple Creek policies.  Rather, Morreale specifically alleges that Stauffer acted pursuant to Cripple Creek police department policy.  Amended Complaint, Appellant's App., Tab 6 at 6; Pretrial Order, Id., Tab 10 at 3; Summary Judgment Memorandum, Appellee's App., Tab M at 9.  Hence, we must consider Stauffer's conduct in light of our previous finding that the underlying policy does not violate the Constitution.  In the ordinary situation in which a suspect is wearing undergarments, we would not conclude that a visual inspection for weapons or contraband is unconstitutional.  The fact that Morreale was not wearing undergarments

---

[13]In fact, the policy makes an exception for juveniles who are not a danger to themselves or others.  However, "[t]he reasonableness of any particular government activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means."   Illinois v. Lafayette, 462 U.S. 640, 647 (1983).

when she was ordered to change into the jumpsuit, and that she was therefore fortuitously subjected to a visual inspection while naked, does not convert a permissible action into a constitutionally impermissible one. Accordingly, Morreale has not alleged a constitutional violation, and the action must be dismissed as to Stauffer.

For the reasons stated, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge