(913 P.2d 1200)
No. 71,621 █

LAURA VETTER, *Appellant,* v. CHAD MORGAN and DANA GAITHER, *Appellees.*

Opinion filed May 5, 1995. █

*Robert L. Pottroff*, of Myers, Pottroff & Ball, of Manhattan, for the appellant.

*J. Roger Hendrix*, of Hendrix & Wright, of Topeka, for the appellees.

Before BRISCOE, C.J., ELLIOTT and PIERRON, JJ.

BRISCOE, C.J.: Laura Vetter appeals the summary judgment dismissal of her intentional infliction of emotional distress, assault, and negligence claims against Chad Morgan for injuries sustained in an automobile accident. We affirm the summary judgment in favor of Morgan on the tort of outrage claim, and reverse and remand for further proceedings on the balance of Vetter's claims against Morgan.

Vetter was injured when her van ran off the road after an encounter with a car owned by Morgan's father and driven by Dana Gaither. Morgan and Jerrod Faulkner were passengers in the car. Vetter was alone at 1:30 or 1:45 a.m. when she stopped her van in the right-hand westbound lane of an intersection at a stoplight. Morgan and Gaither drove up beside Vetter. Morgan began screaming vile and threatening obscenities at Vetter, shaking his fist, and making obscene gestures in a violent manner. According to Vetter, Gaither revved the engine of the car and moved the car back and forth while Morgan was threatening Vetter. Vetter testified that Morgan threatened to remove her from her van and spat on her van door when the traffic light turned green. Vetter stated she was very frightened and thought Morgan was under the influence of drugs or alcohol. She was able to write down the license tag number of the car. Morgan stated he did not intend to scare, upset, or harm Vetter, but "didn't really care" how she felt. He was trying to amuse his friends, who were laughing at his antics.

When the traffic light changed to green, both vehicles drove forward. According to Vetter, after they had driven approximately 10 feet, the car driven by Gaither veered suddenly into her lane, and she reacted by steering her van sharply to the right. Vetter's van struck the curb, causing her head to hit the steering wheel and snap back against the seat, after which she fell to the floor of the van. Morgan and Gaither denied that the car veered into Vetter's lane, stating they drove straight away from the intersection and did not see Vetter's collision with the curb.

Vetter filed this action against Morgan and Gaither, alleging their negligent or intentional actions had caused her injuries. The trial court granted summary judgment in favor of Morgan, ruling Vetter could not raise a negligence claim against Morgan for unintended results of his intentional acts. The court concluded that Morgan could not be liable for Gaither's actions because Morgan did not participate in driving the car. The court also concluded Morgan's actions did not constitute assault or outrageous conduct and dismissed all claims against Morgan. Gaither settled with Vetter, and the trial court approved the settlement.

The standard of review for a summary judgment is set out in *Kerns v. G.A.C. Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994):

> "The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."

## I. Tort of outrage.

Vetter contends the trial court erred in concluding as a matter of law that Morgan's actions did not constitute outrageous conduct. There are two threshold issues that must be decided before liability may be imposed for intentional infliction of emotional distress: whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and whether the emotional distress suffered by the plaintiff is in such extreme degree that the law must intervene because no reasonable person should be expected to endure it. *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024 (1991).

There was no evidence that Vetter suffered extreme emotional distress sufficient to support her claim. Her testimony that she was

"very, very frightened" during the incident does not establish the kind of extreme emotional distress required for liability. See *Roberts v. Saylor*, 230 Kan. 289, 296, 637 P.2d 1175 (1981). Although Vetter testified that she later became very depressed and was given a prescription for Prozac for a short time, this testimony was given when she was describing her physical injuries and medical treatment for them rather than her emotional reaction to Morgan's actions.

## II. Assault.

Vetter argues the trial court erred in dismissing her assault claim against Morgan. Assault is defined as "an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary." *Taiwo*, 249 Kan. at 596 (quoting PIK Civ. 2d 14.01).

The trial court concluded there was no evidence that Morgan threatened or attempted to harm Vetter, that he had no apparent ability to harm her because her van was locked and the windows were rolled up, and there was no claim of immediate apprehension of bodily harm. Vetter contends all of these conclusions involved questions of fact that should have been resolved by a jury.

There was evidence of a threat. Vetter testified in her deposition that Morgan verbally threatened to take her from her van. Ordinarily, words alone cannot be an assault. However, words can constitute assault if "together with other acts or circumstances they put the other in reasonable apprehension of imminent harmful or offensive contact with his person." Restatement (Second) of Torts § 31 (1964). See *Gomez v. Hug*, 7 Kan. App. 2d 603, 606, 645 P.2d 916, *rev. denied* 231 Kan. 800 (1982).

The record is sufficient to support an inference that Morgan's threat and the acts and circumstances surrounding it could reasonably put someone in Vetter's position in apprehension of imminent or immediate bodily harm. Morgan's behavior was so extreme that Vetter could reasonably have believed he would immediately try to carry out his threat. It is not necessary that the victim be placed in apprehension of instantaneous harm. It is sufficient if it appears

there will be no significant delay. See Restatement (Second) of Torts § 29(1), comment b (1964).

The record also supports an inference that Morgan had the apparent ability to harm Vetter. Although Vetter's van was locked and the windows rolled up, the windows could be broken. The two vehicles were only six feet apart, and Morgan was accompanied by two other males. It was late at night, so witnesses and potential rescuers were unlikely. Although Vetter may have had the ability to flee by turning right, backing up, or running the red light, her ability to prevent the threatened harm by flight or self-defense does not preclude an assault. It is enough that Vetter believed that Morgan was capable of immediately inflicting the contact unless prevented by self-defense, flight, or intervention by others. See *Lesser v. Neosho County Community College*, 741 F. Supp. 854, 865-66 (D. Kan. 1990); Restatement (Second) of Torts § 24, comment b (1964).

The trial court erred in concluding there was no evidence that Vetter was placed in apprehension of bodily harm. Whether Morgan's actions constituted an assault was a question of fact for the jury.

III. Negligence—unintended results of intentional acts.

Vetter next contends the trial court erred in concluding as a matter of law that she could raise no negligence claim against Morgan because it was uncontroverted that Morgan's acts were intentional. Vetter argues she can raise a negligence claim based on the unintended results of Morgan's intentional acts, a theory specifically rejected by the trial court.

A negligence claim may be based on intentional rude pranks and horseplay that cause unintended injury. See *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824 (1964). Actions that are not intended to, but do cause fear of harm may be negligence. See Restatement (Second) of Torts § 21(2) (1964). Moreover, a negligence claim may be based on actions the defendant intends to affect, or should realize are likely to affect, the conduct of another in a manner that creates an unreasonable risk of harm to another. Consequently, it is negligence to subject another to

sudden fright or shock because of the risk that the victim's reaction may cause harm. See Restatement (Second) of Torts § 303, comments d and e (1964); *Henkel v. Jordan,* 7 Kan. App. 2d 561, 562-64, 644 P.2d 1348, *rev. denied* 231 Kan. 800 (1982).

The trial court erred in concluding that Morgan's actions could not constitute negligence. It was uncontroverted that Morgan was accompanied by two other males when he subjected Vetter, a lone woman in a vehicle stopped at an intersection late at night, to screamed obscenities and gestures. There was evidence that he threatened to take her from her van. Although Morgan said his only intent was to amuse his friends, and he denied that he intended to frighten or harm Vetter, she testified that she was "very, very frightened." The record supports a reasonable inference that Morgan should have realized Vetter would be frightened and that it was foreseeable that her fright would create a risk of harm.

## IV. Proximate cause of accident and injuries.

The trial court concluded that Morgan could not be liable for Vetter's physical injuries because he was not driving the car. Vetter contends there is sufficient support in the record for a reasonable inference that Morgan's actions were a proximate cause of the accident and her injuries.

To be a cause in fact, Morgan's actions had to be a "substantial factor" in bringing about the harm. *Roberson v. Counselman,* 235 Kan. 1006, 1012, 686 P.2d 149 (1984). Causation is ordinarily a question for the jury, "unless the issue is so clear that reasonable men could not differ." *Roberson,* 235 Kan. at 1011.

The record contains evidence that Morgan's actions, which continued for some 30 seconds, made Vetter "very, very frightened." Within seconds after the light changed, Morgan's car veered suddenly toward Vetter's van, and she reacted by instinctively turning sharply toward the curb. It would not be unreasonable to infer that her frightened state caused her to overreact to the car's approach and hit the curb, and that Morgan's actions were a substantial factor in bringing about the accident. This was a question of fact for the jury.

The record also contains evidence to support Vetter's theory that Morgan's actions were a proximate cause of her injuries. Proximate cause is defined as that cause which, " 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.' " *St. Clair v. Denny,* 245 Kan. 414, 420, 781 P.2d 1043 (1989).

The record does not conclusively establish that Gaither's actions in veering sharply toward Vetter's van were an independent intervening cause that broke the causal connection between Morgan's actions and Vetter's injuries. The rule that a causal connection between an actor's wrongful act and an injury is broken by an independent intervening cause does not apply when the intervening cause might reasonably have been foreseen by the actor. See *Miller v. Zep Mfg. Co.,* 249 Kan. 34, 51, 815 P.2d 506 (1991).

The record does not establish that Gaither's swerving toward Vetter's van was unforeseeable by Morgan. Gaither was amused by Morgan's harassment of Vetter, and there was evidence that he contributed to the threatening atmosphere by revving the engine and moving the car back and forth. It was not unforeseeable that Gaither would intentionally or recklessly drive in a manner that might further threaten Vetter. Moreover, Gaither was not independent of Morgan. The car belonged to Morgan's father, which gave Morgan "a peculiar ability" to control the manner in which the car was driven. See Restatement (Second) of Torts § 318, comment a (1964). Whether Gaither's actions were an independent intervening cause was a question of fact for the jury.

## V. Joint venture.

Vetter also contends the trial court erred in concluding that Morgan could not be liable for the wrongful conduct of Gaither. She argues they are liable for each other's actions because they jointly engaged in the harassment.

One person may be liable for the tortious conduct of another when they act in concert. Restatement (Second) of Torts § 876 (1977) sets out rules for tort liability of persons acting in concert:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

Under Kansas law, § 876 of the Restatement corresponds to the theories of civil conspiracy and aiding and abetting. *State ex rel. Mays v. Ridenhour,* 248 Kan. 919, 936, 811 P.2d 1220 (1991). Civil conspiracy has five elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." 248 Kan. at 927. When all elements are present, any act done by a member of the conspiracy in furtherance of the common object and in accordance with the general plan becomes the act of all, and each conspirator is responsible for the act. See *Vaughan v. Hornaman,* 195 Kan. 291, 299, 403 P.2d 948 (1965). Because direct evidence is rarely available, a civil conspiracy may be proved by circumstantial evidence. Consequently, the existence of the conspiracy may be proved by proving the acts of the various defendants. See *Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 911, 101 P.2d 1045 (1940).

Here, the record contains evidence to support Vetter's claim that Morgan was liable for Gaither's actions. There was evidence that Morgan and Gaither had a common goal of harassing and frightening Vetter and they acted together to accomplish that object. Each engaged in an unlawful overt act, Morgan by his verbal abuse and threats, and Gaither by swerving toward Vetter's van. Gaither's act caused Vetter's accident and injuries. There was evidence to support all elements necessary to make Morgan liable for Gaither's act. This evidence was sufficient to withstand Morgan's motion for summary judgment.

Affirmed in part, reversed in part, and remanded for further proceedings.