No. 79,140

DAVID CULLIP, a minor child, by and through his next friend, DAVID M. PITTS, *Appellant,* v. WILLIAM ROBERT-PAUL DOMANN, a minor child, by and through his next friend, Lee Domann; NORMA WIMBERLY; LEE DOMANN; and LULA O'HARA, Defendants, and JOHNNY JACK MERCER, by and through his next friend, Joe Mercer; JOE MERCER; and LUELLA MERCER, *Appellees.*

(972 P.2d 776)

Opinion filed January 22, 1999.

*Norbert C. Marek, Jr.,* of Myers, Pottroff & Ball, of Manhattan, argued the cause, and *Charles K. Ball,* of the same firm, was with him on the brief for appellant.

*Patrick M. Salsbury*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, argued the cause, and *Curtis J. Waugh*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: The plaintiff, David Cullip, age 14, and two friends the same age, the defendants Johnny Jack Mercer (J.J.) and William Domann, went hunting on property not owned by them. A 12-gauge shotgun carried by William accidentally discharged, striking the plaintiff and causing permanent paralysis. After discovery and partial settlement with other named defendants, the trial court granted summary judgment to J.J. and his parents, Joe and LuElla Mercer, on all of the plaintiff's negligence claims. The plaintiff appeals and we affirm.

The trial court adopted the statement of uncontroverted facts submitted by the defendants in their motion for summary judgment. In summary, those facts established that it was the plaintiff's idea for the boys to go hunting just outside of Eskridge. The plaintiff provided two .22 rifles and a 12-gauge shotgun for the hunting trip. The plaintiff's mother, Lula O'Hara, gave the plaintiff permission to go hunting, briefly instructed the boys about gun safety, transported them to the location, and dropped them off for the afternoon.

J.J. did not know of the hunting plans until he arrived at the plaintiff's house. J.J. did not inform his parents of the plans. J.J. had never gone hunting prior to the incident and had never completed a hunter safety course. J.J. had "no real experience" with weapons other than BB guns prior to the incident. The only training J.J. received from his father regarding firearms was "to not point guns at people and stuff like this." J.J. was aware that he was required to possess a hunter safety certificate in order to hunt on another person's property. J.J. did give the plaintiff $5 to buy a box of .22 shells.

J.J.'s father, Joe Mercer, knew that J.J. had not completed a hunter safety course and was also aware that a hunter safety certificate was required to hunt on another person's property. Joe Mercer did not require J.J. to ask for permission to use a firearm

and J.J. could do so at his discretion. J.J. could also go hunting at J.J.'s discretion. However, Joe Mercer had no knowledge that J.J. had ever used a loaded firearm prior to the incident. Joe Mercer testified in his deposition that it came as no surprise to him that J.J. had gone hunting with the plaintiff without adult supervision and it was foreseeable to him that J.J. would decide to use a gun.

Joe Mercer testified that at some point he would want J.J. to have adequate training in firearms use. He also felt that he had a responsibility as a parent to make sure that J.J. was properly instructed on weapon safety before using a weapon. He did not know if he had ever told J.J. about the dangers involved in using a firearm. However, Joe Mercer did not foresee extraordinary danger in J.J. hunting without adult supervision.

Just before the accidental discharge of the weapon, the plaintiff was climbing up a creek bank. J.J. knew that William was carrying the loaded shotgun in the immediate area but he was not paying attention to William. J.J. gave no warning to the plaintiff regarding William's line of fire prior to the shooting. In fact, J.J. did not know the meaning of "line of fire." The shotgun held by William accidentally discharged, striking the plaintiff and resulting in a paralyzing injury.

The plaintiff filed suit against William and his father and stepmother, as well as plaintiff's mother, Lula O'Hara. The plaintiff also named J.J. and his parents as defendants in his action. Before summary judgment, the plaintiff settled with or dismissed all the defendants except J.J. and his parents. On the Mercers' motion, the trial court granted them summary judgment. The trial court concluded on the basis of uncontroverted facts that Joe and LuElla Mercer owed no duty to the plaintiff and that J.J. breached no duty owed to the plaintiff. We transferred the plaintiff's appeal to this court under the provisions of K.S.A. 20-3018(c), which is the basis for this court's jurisdiction.

Discussion and Analysis

The plaintiff argues that J.J.'s failure to take a hunter safety course as required by K.S.A. 32-920 is negligence per se, subjecting J.J. to liability for the plaintiff's injury and damages. The plaintiff

also argues that liability may be predicated upon a joint venture giving rise to the duty of each member of the hunting party to insure that proper safety precautions were followed by all members of the joint venture.

The plaintiff contends that he raised the following eight grounds for negligence before the trial court: (1) hunting in violation of the law contrary to K.S.A. 32-920; (2) failure to follow proper gun safety precautions; (3) failure to warn; (4) failure to insure that weapons were unloaded or incapable of firing, particularly in light of the special hazard of the plaintiff's traversing an obstacle; (5) failure to communicate regarding safety issues while traversing an obstacle; (6) failure to exercise proper precaution; (7) failure to obtain proper hunter safety training or experience; and (8) failure to obtain parental permission to hunt or use a firearm. However, the plaintiff provides no citation to the record for his contention and our review of the record fails to support the plaintiff's contention.

The plaintiff identified the following theories of liability in his opposition to the defendants' motion for summary judgment: (1) J.J.'s failure to comply with K.S.A. 32-920 established negligence per se; and (2) J.J., as a member of the joint venture, assumed a duty of care to follow the tenets of hunter safety and to take safety precautions, a duty which he breached. We examined both contentions in accordance with our well-established standard of review on summary judgment:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

## (1) Negligence Per Se

The plaintiff argues that J.J. had not completed a hunter safety course, in violation of K.S.A. 32-920, and that J.J.'s violation was negligence per se under Kansas law and caused the injury to the plaintiff. There is no dispute in this case that J.J. violated the following provisions of K.S.A. 32-920:

"No person born on or after July 1, 1957, shall hunt in this state on land other than such person's own land unless the person has been issued a certificate of completion of an approved hunter education course. If such person is required by law to obtain a hunting license, the person shall exhibit proof of completion of such course to the person issuing the license at the time of purchasing the license. If such person is not required by law to obtain a hunting license or is less than 27 years of age, the person shall be in possession of the person's certificate of completion of such course while hunting. A person may purchase for another person, under rules and regulations adopted by the secretary in accordance with K.S.A. 32-805 and amendments thereto, a lifetime hunting or combination hunting and fishing license without the license recipient's first having been issued a certificate of completion of an approved hunter education course."

The elements of negligence per se are: "(1) A violation of a statute, ordinance or regulation, and (2) the *violation must be the cause of the damages resulting therefrom.*" (Emphasis added.) *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 339, 918 P.2d 1274 (1996). In addition, the plaintiff must also establish that an individual right of action for injury arising out of the violation was intended by the legislature. *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 370-71, 819 P.2d 587 (1991). We need not focus in this opinion upon the question of whether the legislature intended by K.S.A. 32-920 to create an individual right of action for injuries arising out of the violation because the uncontroverted facts fail to establish that the violation of K.S.A. 32-920 in this case caused injury or damage to the plaintiff.

Liability in damages cannot be predicated on a violation of a statute unless the breach of the law is the proximate cause of the injury or damages, or substantially contributes thereto. *Kendrick v. Atchison, T. & S.F. Rld. Co.*, 182 Kan. 249, Syl. ¶ 7, 320 P.2d 1061 (1958). A connection must be established between the vio-

lation proved and the damage or injury occasioned. *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 75, 483 P.2d 1029 (1971).

The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces injury and without which injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. *Kendrick*, 182 Kan. at 260. Ordinarily, questions of negligence, including proximate cause, are questions of fact to be resolved by the trier of fact. *Steele v. Rapp*, 183 Kan. 371, 383, 327 P.2d 1053 (1958). However, where all the evidence relied upon by a party is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law. *Schenck v. Thompson*, 201 Kan. 608, 617, 443 P.2d 298 (1968). In this case, the material facts concerning causation are uncontroverted and the question may be resolved as a matter of law.

The question under the uncontroverted facts in this case is whether J.J.'s violation of K.S.A. 32-920 caused the injury to the plaintiff. The material facts established that another member of the hunting party, William, accidentally discharged the 12-gauge shotgun he was carrying, striking the plaintiff in the back as the plaintiff climbed up a creek bank. Under these circumstances, we may conclude as a matter of law that the violation of K.S.A. 32-920 by J.J. was not the proximate cause of the plaintiff's injury. Instead, the proximate cause of the injuries to the plaintiff was the accidental discharge of the shotgun carried by William.

## (2) Joint Venture/Joint Enterprise/Concerted Action

The other theory advanced by the plaintiff in his attempt to establish that J.J. owed a duty to him is the theory of joint venture. Under Kansas law, a joint venture occurs where two or more persons combine to engage in a single business enterprise for profit, such that liability is imputed to all participants. See *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 363, 388 P.2d 824 (1964); *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1049-50, 934 P.2d 121 (1997). The essential elements to establish joint venture liability are (1) an agreement; (2) a common purpose; (3) a community of interest; and (4) an equal right to a voice accompanied by

an equal right of control over the instrumentality causing the injury. 261 Kan. at 1050.

The plaintiff argues that he, William, and J.J. were involved in a joint hunting venture such that they owed duties to each other in furtherance of that venture. However, under Kansas law, the recreational hunting party in this case may not be considered a joint venture. A joint venture results when the enterprise is undertaken for profit. See *Stricklin*, 192 Kan. at 363. There is no evidence or allegation that the boys were engaged in a business enterprise.

Without articulating the difference between a joint venture and a joint enterprise, the plaintiff contends that liability arises out of the joint enterprise. In Kansas, the elements of joint ventures and joint enterprises are essentially the same, with the distinction that joint ventures apply to business ventures while joint enterprises do not. The elements of a joint enterprise are (1) an agreement, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice, accompanied by an equal right of control over the instrumentality. See *Scott v. McGaugh*, 211 Kan. 323, 327, 506 P.2d 1155 (1973). In *Scott*, the question was whether a passenger might be liable to a third person for the negligence of the driver. This court held that in situations where the passenger and driver were engaged in a joint enterprise, the passenger could be held liable to third persons for the negligence of the driver. 211 Kan. at 327-31.

In this case, the uncontroverted facts do not establish a joint enterprise. It is doubtful whether the first three requirements of a joint enterprise are met even though there is some evidence that plaintiff, J.J., and William might have had an agreement to hunt, a common purpose in hunting, and a community of interest. However, there is no question that the fourth element, an equal right of control over the instrumentality, is lacking.

In *Delgado v. Lohmar*, 289 N.W.2d 479 (Minn. 1979), four young men decided to go grouse hunting on the plaintiff's land without his permission. When the plaintiff saw the hunters and came out to question them, one of the hunters, who was shooting at a bird, accidentally shot the plaintiff in the eye. The plaintiff sought to hold all the hunters liable under a joint enterprise theory.

However, the Minnesota Supreme Court stated that as a matter of law, the hunters were not engaged in a joint enterprise because they were engaged in a recreational activity on a gratuitous and voluntary basis with no sharing of expenses or equipment, and, more importantly, each hunter had control of his or her own gun. 289 N.W.2d at 483.

The facts are similar in this case. While there was some sharing in equipment in that the guns were provided by the plaintiff, the boys each had control of their own guns. J.J. had no right to control the instrumentality involved in the negligence, William's shotgun, or indeed to control William's actions in wielding the gun.

"Where evidence of the relationship and understanding of the parties is undisputed and the facts and circumstances clearly show a passenger [alleged participant in a joint enterprise] does not have an equal privilege and right to control . . . the issue of joint enterprise to support vicarious liability becomes one of law for the court's determination . . . ." *Scott*, 211 Kan. at 331.

We conclude under the uncontroverted facts of this case that not all of the elements of a joint enterprise are present. As a matter of law, the plaintiff's theory fails.

There is a second problem with the plaintiff's theory that liability arises out of a joint enterprise. While a joint enterprise makes each member of the enterprise liable for the actions of other members with regard to third persons who are not members, it does not establish a duty of care between its members. See 46 Am. Jur. 2d, Joint Ventures §§ 6, 42. This is somewhat in contrast to a joint venture which has been held to impose a duty on all its members to engage in a full, fair, open, and honest disclosure of everything affecting the business relationship. See *Goben v. Barry*, 234 Kan. 721, 728, 676 P.2d 90 (1984). Thus, even if the plaintiff could have established a joint enterprise, he cannot establish that such a relationship creates a duty among and to the members of the joint enterprise.

Nevertheless, the plaintiff argues that "[a] number of authorities support liability by one member of a joint enterprise to another who is injured." As authority for this proposition, he cites *Galloway v. Korzekwa*, 346 F. Supp. 1086, 1093 (N.D. Miss. 1972), 46 Am. Jur. 2d, Joint Ventures § 30, and Martin J. McMahon, Annotation,

*Modern Status of Rule Imputing Motor Vehicle Driver's Negligence to Passenger on Joint Venture Theory*, 3 A.L.R.5th 1, § 5. None of these citations are authority for the proposition which he alleges. Rather, each simply notes that in a joint venture the mere fact that each member of the venture might be jointly liable to third parties does not prevent them from suing each other. In this case, the plaintiff sued William, who carried and accidentally discharged the shotgun. Depending upon the circumstances, the tortious conduct of one member of a joint enterprise may be imputed to other members in an action brought by a third party, but the tortious conduct of one member of a joint enterprise is not imputed to the other members of the joint enterprise in an action between members of a joint enterprise.

Finally, the plaintiff argues that Kansas law has recognized joint liability when parties are involved in a joint enterprise, citing *Vetter v. Morgan*, 22 Kan. App. 2d 1, 913 P.2d 1200 (1995). *Vetter* provides little, if any, support for the plaintiff's argument. In *Vetter*, the driver of a van and his passenger intentionally verbally assaulted and swerved toward the plaintiff, causing an accident. In discussing the liability of the passenger, the Court of Appeals found that one person may be liable for the tortious conduct of another when they act in concert pursuant to a common design. 22 Kan. App. 2d at 7-8. In so doing, the Court of Appeals cited Restatement (Second) of Torts § 876 (1977), setting out the rules for tort liability of persons acting in concert:

" 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.' " 22 Kan. App. 2d at 8.

*Vetter* does not apply to the facts of this case. *Vetter* has nothing to do with joint venture or joint enterprise law but instead speaks only of liability for concerted tortious action. More importantly,

*Vetter* establishes only that persons acting in a concerted manner may be liable for injuries to *third persons*. In this case, the plaintiff was a member of the hunting party, not a third person. Further, the concerted action in *Vetter* was tortious. The Court of Appeals noted that the quoted Restatement passage "corresponds to the theories of civil conspiracy and aiding and abetting." 22 Kan. App. 2d at 8.

A case similar in nature to *Vetter* is *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340, 440 P.2d 621 (1968). In *Grim*, four boys attempted to break into a church to steal Cokes. In their attempt, they accidentally set the church on fire. This court, citing the same Restatement passage as that in *Vetter*, although the first rather than second edition, held that two or more persons engaged in the commission of a tortious act, unlawful in nature, are jointly and severally liable for other foreseeable wrongful acts done in connection with the intended act. See 201 Kan. at 344-46. Neither *Vetter* nor *Grim* stand for the proposition that persons engaged in a concerted venture may be liable to other members of the venture solely as a result of the concerted action.

The plaintiff would have us adopt the proposition that simply being a part of a recreational hunting party creates a duty on the part of one of the members to look out for the safety of the other members. The plaintiff contends that J.J.'s duty should be similar to that of an automobile passenger with respect to the duty to warn. He argues that under Kansas law the passenger of a vehicle has the obligation to warn the driver of danger, citing *Curtiss v. Fahle*, 157 Kan. 226, 139 P.2d 827 (1943). He contends that in the same manner a hunter has a duty to warn members of his hunting party, citing *Delgado*, 289 N.W.2d 479.

*Curtiss* involved an entirely different question than the one we consider today. The question in *Curtiss* was whether a passenger could be contributorily negligent for failure to look after his or her own safety in cases where the passenger was suing for damages. See 157 Kan. at 238. It has never been recognized in Kansas that the passenger owes a duty to other passengers. *Akins v. Hamblin*, 237 Kan. 742, 749, 703 P.2d 771 (1985). The plaintiff's position as a fellow member of the hunting party puts him in the same situa-

tion as a fellow passenger in a car to whom the other passengers owe no duty of care.

*Delgado* involved only the duty of members of a hunting party toward third persons to warn others in the hunting party of their presence. In that case, the fact that the hunters were engaged in hunting on the land of a third person without the other's consent or knowledge created a duty, owed to the third person, on the part of each of the hunters to warn each other of the presence of the third person. 289 N.W.2d at 483-84. *Delgado* does not stand for the proposition that a hunter owes such a duty to other members of his hunting party.

Under the uncontroverted facts of this case, the trial court did not err in finding that J.J. had no duty to the plaintiff.

## (3) Liability of Joe and LuElla Mercer

The plaintiff also argues that the trial court erred in granting summary judgment in favor of J.J.'s parents, Joe & LuElla Mercer. He contends that the parents had a duty to control J.J. and that the injury to him as the result of J.J.'s conduct was foreseeable.

As a general rule in Kansas, there is no duty to control the conduct of a third person in order to prevent harm to others absent a special relationship. *McGee v. Chalfant*, 248 Kan. 434, 438, 806 P.2d 980 (1991). Such a relationship, however, may exist between parent and child. 248 Kan. at 438. We have adopted Restatement (Second) of Torts, § 316 (1964), which sets forth the duties of a parent to control a child:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control."

See *McGee*, 248 Kan. at 438.

The plaintiff argues that J.J.'s parents had a duty to control the actions of J.J. to prevent him from harming the plaintiff. The fatal flaw in the plaintiff's argument is that J.J. did not cause the harm to the plaintiff. Instead, the harm was caused by William. The

plaintiff argues that Joe and LuElla Mercer should have trained J.J. in the use of a firearm or otherwise controlled his conduct. However, the plaintiff fails to show how this training would have prevented the accident in this case. Nothing in the way in which J.J. conducted himself created an unreasonable risk of bodily harm to the plaintiff. Under the circumstances, the Mercers had no duty to control J.J. and, thus, as a matter of law, were not negligent.

Finally, foreseeability is absent in this case. It is true that foreseeability is generally a question of fact for the jury. *Kansas State Bank & Tr. Co.*, 249 Kan. at 362. However, in this case there was simply no evidence that Joe and LuElla Mercer should have known that control over J.J. was necessary. Under the uncontroverted facts, they had no idea that J.J. was going hunting on the day in question. In fact, until he arrived at the plaintiff's house, J.J. did not know the boys would be hunting. J.J. had never gone hunting before and to the Mercer's knowledge had never used a firearm before. While Joe Mercer did testify that he was not surprised that J.J. had gone hunting and it was foreseeable to him that J.J. decided to use a gun, this, by itself, does not establish that the Mercers had a duty to control J.J. on the day in question.

Affirmed.