No. 93,726

KATHERINE YOUNT, Individually and as Natural Mother and Heir of HENRY J. YOUNT, JR., Deceased, and as SPECIAL ADMINISTRATRIX OF THE ESTATE OF HENRY J. YOUNT, JR., Deceased, *Appellant,* v. MIKE SCOTT DEIBERT, TOM ALLEN PROBST, and JAMES LEVI WISENHUNT, *Appellees.*

147 P.3d 1065

Opinion filed December 8, 2006.

*Patrick C. Smith*, of Loy Law Firm, L.L.C., of Pittsburg, argued the cause and was on the brief for appellant.

*David S. Brake*, of Henshall, Pennington & Brake, of Chanute, argued the cause, and *Bryan A. Ross*, of the same firm, was with him on the brief for appellee Tom Allen Probst.

*Per Curiam*: This tragic house-fire case involves a wrongful death action brought by Katherine Yount, individually and as the natural mother, heir, and special administratrix of the Estate of Henry J. Yount, Jr. This court granted Katherine Yount's petition for review

in which she sought review of the Court of Appeals' 2 to 1 decision affirming the district court's grant of summary judgment to defendants Mike Scott Deibert, Tom Allen Probst, and James Levi Wisenhunt. Review of the decision requires consideration of whether Yount must be able to prove the cause of the fire rather than rely upon circumstantial evidence that the defendants negligently started the fire and whether Restatement (Second) of Torts § 876 (1977) regarding joint liability applies in a comparative negligence case.

Yount brought this suit after her house burned down on November 5, 2000. Yount, her son Henry, and one of Henry's friends were sleeping in the house at the time of the fire. Although injured, Yount was able to escape from the house; Henry and his friend were not so fortunate and both died as a result of the fire.

The defendants, friends of Henry, were at Yount's house earlier that night. Inside the house, the defendants and others engaged in various pyromaniacal activities. They lit numerous candles in the living room area, burned matches, burned small fires, and tried to light some alcohol or perfume near the coffee table. Outside the house, the defendants lit fireworks and burned lighter fluid, leaves, and part of a tree. They also experimented with pop bottle bombs. Later that night, the defendants left the house for the purpose of going out and stealing gasoline, ostensibly to enhance their fire-making activities. One of the boys, Probst, told investigators he thought there was one candle burning when they left, but they did not leave anything else burning. The other two defendants indicated the candles were extinguished.

David Yates, with the Kansas State Fire Marshall's office, conducted an investigation of the fire. In his report, Yates indicated that he could not determine the exact cause of the fire, but he ascertained the fire's point of origin was inside the house on the first floor in the living area. Nothing was found to support a conclusion that the fire was anything but accidental, and there was no indication of foul play associated with the fire or deaths. Further, Yates found nothing to indicate the utilities, the gas appliances, or the weather caused the fire. Yates was aware that there were boys at the house playing and experimenting with fire, but he found

nothing to support a theory that they intentionally set the fire. He also noted that there had been an intentionally set fire at Yount's house in July 2000, but nothing linked the two fires.

## District Court's Decision

Yount filed suit against the defendants on November 5, 2002, claiming they negligently and carelessly caused or allowed a fire to start at Yount's residence that consumed the house and caused the death of Yount's son Henry. Defendant Probst filed a motion for summary judgment; in his supporting memorandum, Probst argued there was no substantial competent evidence for a reasonable jury to conclude that he committed an affirmative negligent act that caused Yount's damages. The district court granted summary judgment based on the fact that—regardless of whether the defendants' actions on the night of the fire were negligent—Yount failed to prove the cause of the fire.

In a letter directing defendant Probst's counsel to prepare an order granting summary judgment, the district court stated it was unable to determine "how a jury could compare fault when no cause of the fire can be determined." The court also stated it was granting summary judgment in favor of the defendants "because the Court, under our present rules of comparative negligence cannot determine how a jury can compare fault in this case without guessing and speculating." The district court went on to explain that "a jury could well find that the group activities of the defendants were the likely cause of this fire" but that Yount could not show which particular activity caused the fire or which defendant engaged in that particular activity. Because the district court believed the rules of comparative negligence would not allow the jury to find all three defendants 100 percent at fault or to divide fault equally between them, the court found Yount's lawsuit could not proceed. In its subsequent journal entry of summary judgment, the district court stated:

"The only expert witnesses qualified to testify as to cause or origin of a fire could not conclude whether the fire was caused by a candle in a holder, much less whether or not the fire was caused as a result of negligence and, even more

importantly, they cannot conclude who, if anyone, started the actual fire which consumed the Yount residence."

The court found the undisputed facts made it impossible to determine by a preponderance of the evidence which flame—open flame, flame from a candle, or flames from an unknown source—started the fatal fire.

### Court of Appeals' Decision

Yount appealed, and a majority of the Court of Appeals affirmed the district court's decision. See *Yount v. Deibert*, No. 93,726, 126 P.3d 455, unpublished opinion filed January 20, 2006. The majority agreed with the district court's finding that Yount failed to provide evidence of the cause of the fire. The majority determined that, although there was circumstantial evidence of the defendants' playing with fire on the night in question, a jury would not be able to make an ultimate decision regarding causation absent "speculation or conjecture." *Yount*, slip op. at 6. The Court of Appeals further stated: "[I]t appears Yates would only have information on whether the boys intentionally set the fire and not whether the boys accidentally set the fire." *Yount*, slip op. at 7.

With regard to the previous fire (set intentionally) at Yount's house in July 2000, the Court of Appeals noted that nothing linked the present case to that incident. The majority observed that someone from Yount's town had threatened to kill one of Yount's sons because he blamed her for a fire that caused the death of his friend when Yount was a teenager. In addition, Fire Inspector Yates reported an interview with the mother of one of Henry's friends in which it was intimated that a person other than the defendants was involved in the current fire. Ultimately, the majority concluded that, because the cause of the current fire was undetermined, summary judgment was appropriate. *Yount*, slip op. at 7.

Judge Richard Greene dissented. In his opinion, negligent activity on the part of the defendants was clearly established and such negligence was circumstantial evidence of causation for the fatal fire. According to the dissent, evidence that the fire was not "intentionally set" did not preclude a finding that the fire was directly and proximately caused by negligence. *Yount*, slip op. D-1

(Greene, J., dissenting). Moreover, with regard to the potential inability to identify which of the defendant boys should be liable, Judge Greene would have applied the rule set out in the Restatement (Second) of Torts § 876 (1997), which states that an individual may be liable for the tortious conduct of another when the persons act in concert. *Yount*, slip op. at D-4-5 (Greene, J., dissenting).

This court granted Yount's petition for review. Yount argues the district court erred in granting summary judgment to the defendants. In raising this argument, Yount contends the district court erred in finding the plaintiff was incapable of proving the defendants caused the fire. She also asserts the court should have allowed the case to proceed under a theory of joint liability in that the defendants allegedly acted "in concert."

## ANALYSIS

Yount argues that the district court erred in granting summary judgment to the defendants.

### Standard of Review

This court's standard of review of summary judgment rulings is well established, as set forth in *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002):

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]"

Summary judgment is proper in a negligence action if the only questions presented are questions of law. To recover for negligence, a plaintiff must prove the existence of a duty, breach of that

duty, injury, and a causal connection between the duty breached and the injury suffered. *Schmidt v. HTG, Inc.*, 265 Kan. 372, 396-97, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998); see *Sall v. T's, Inc.*, 281 Kan. 1355, Syl. ¶ 2, 136 P.3d 471 (2006). Whether a duty exists is a question of law. Whether there is a causal connection between the breached duty and the injuries sustained is a question of fact. *Schmidt*, 265 Kan. at 397; see *Marshall v. Heartland Park Topeka*, 274 Kan. 294, Syl. ¶ 2, 49 P.3d 501 (2002). Kansas law does not presume negligence, nor does it allow negligence to be established by conjecture, surmise, or speculation. Negligence must be proved by substantial competent evidence. *Friesen-Hall v. Colle*, 270 Kan. 611, 614, 17 P.3d 349 (2001); *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 280, 436 P.2d 369 (1968).

Courts, in general, appear to be reluctant to draw inferences of negligence from the starting of fires because they are frequent occurrences and, in many instances, result without negligence on the part of any individuals. See *Emigh v. Andrews*, 164 Kan. 732, 736, 191 P.2d 901 (1948); see, *e.g., Watenpaugh v. L.L. Coryell & Son*, 135 Neb. 607, 283 N.W. 204 (1939); *Liberty Ins. Co. v. Central Vermont R. Co.*, 46 N.Y.S. 576, 19 App. Div. 509 (1897).

*Did the District Court Err in Granting Summary Judgment Because the Plaintiff was Incapable of Proving the Defendants Caused the Fire?*

The summary judgment ruling in this case was primarily based on the element of causation. A majority of the Court of Appeals agreed that the cause of the fire was undetermined. *Yount*, slip op. at 7. On review before this court, Yount first argues that a summary judgment ruling was inappropriate because there was enough circumstantial evidence of the defendants' playing with fire to prove to a jury that the defendants caused the blaze that killed her son.

### Proximate Cause of Fire and Injuries

Proximate cause is defined as that cause which " 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence

of the wrongful act.' " *St. Clair v. Denny*, 245 Kan. 414, 420, 781 P.2d 1043 (1989). This court has stated:

"It is familiar law that negligence must be established by proof. Like any other fact it may be established by circumstantial evidence, but the circumstances relied upon must be of such a nature and so related one to the other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established." *Bottjer v. Hammond*, 200 Kan. 327, 329, 436 P.2d 882 (1968).

Yount does not dispute that Inspector Yates from the State Fire Marshall's office could not determine the cause of the fire. Nevertheless, she notes that Yates described the defendants' activities as "suspect." Thus, Yount contends that, if given the opportunity to present her case to a jury, the inspector would "testify that after ruling out all other causes[,] more likely than not the activities of the Defendants were the origin of the fire."

Only one of the defendants, Tom Probst, submitted an appellate brief in this case. He argues that, because there were "many other sources" for the fire other than the actions of the defendants, negligence on the part of the defendants cannot be inferred. Probst contends that summary judgment was appropriate because Yount could not meet her burden of showing causation, demonstrated by the fact that the only expert witness qualified to give an opinion indicated that the exact cause of the fire could not be determined. See *State v. Smith*, 173 Kan. 807, 813, 252 P.2d 917 (1953) (qualified expert witness may testify regarding his or her opinion regarding causation). It is well established, however, that triers of fact are also permitted to draw upon their own experiences in determining causation. See Restatement (Second) of Torts § 433B (Burden of Proof), Comment b (1965). See *Knowles v. Burlington Northern R.R. Co.*, 18 Kan. App. 2d 608, Syl. ¶ 2, 856 P.2d 1352, *rev. denied* 254 Kan. 1007 (1993) ("When the conclusion of causation is not within the common knowledge of a jury, expert testimony is required.").

### *Wasson v. Brewer's Food Mart, Inc.*

In agreeing with the district court's determination that summary judgment was appropriate, the Court of Appeals relied on *Wasson v. Brewer's Food Mart, Inc.*, 7 Kan. App. 2d 259, 640 P.2d 352,

*rev. denied* 231 Kan. 802 (1982), where the plaintiff was injured by a broken Diet Pepsi bottle when some bottles fell from a display at the defendant Brewer's grocery store. The plaintiff was unable to prove what caused the bottle to fall. This court observed that for a plaintiff to prevail in a negligence action, there must be substantial competent evidence that the plaintiff was injured, the defendants (Brewer's and Pepsi) were negligent, and the defendants' fault was the cause of the plaintiff's injuries. The *Wasson* court held that because the plaintiff did not know what caused the bottle to fall, she could not recover for negligence. This court further emphasized: "[N]egligence in the abstract is never actionable. Actionable negligence is that which *causes* harm. In the absence of any proof of negligence or cause, an inference of both amounts to nothing more than impermissible speculation and conjecture." 7 Kan. App. 2d at 265.

In the present case, a majority of the Court of Appeals found Yount's case similar to *Wasson* because of her supposed failure to provide evidence of causation. The district court and a majority of the Court of Appeals, however, focused heavily on the fact that Inspector Yates found nothing to support a theory that the fire was *intentionally* set. The majority concluded: "[I]t appears Yates would only have information on whether the boys intentionally set the fire and not whether the boys accidentally set the fire." *Yount,* slip op. at 7. The district court, in its journal entry of summary judgment, noted: "Investigator Yates concluded that he found nothing that indicated that the fire and the death were anything but accidental."

The Court of Appeals majority ignored much of the circumstantial evidence involving the defendants' involvement with fire in Yount's living room. The Court of Appeals majority did observe that, although there was circumstantial evidence showing that the defendants played with fire on the night of the incident, there was evidence that Yount had problems with fires in the past. *Yount,* slip op. at 6-7. Inspector Yates' report noted, however, that there was nothing to link the present case to the July 2000 fire. The Court of Appeals further observed that an individual from Yount's town had threatened to kill one of her sons over the years because he

blamed Yount for a fire that caused the death of his friend when Yount was a teenager. Yates also reported an interview with the mother of one of Henry's friends in which she indicated that an individual other than the defendants was involved in the fire. These pieces of evidence, however, do not change the fact that the defendants' pyromaniacal activities occurred in the house not long before it became engulfed in flames. Thus, there was evidence of negligent conduct and circumstantial evidence that the negligent conduct caused the fire. Despite this, defendant Probst argues and the lower courts concluded that evidence does not create an issue of fact for the jury.

## Emigh v. Andrews

To support his argument, defendant Probst cites *Emigh v. Andrews*, 164 Kan. at 737-38, for the proposition that until the cause of the fire is known, there can be no rebuttable inference of negligence. The *Emigh* court considered whether the petition stated a cause of action on the theory of negligence and, in the alternative, whether the petition was sufficient to warrant the application of the doctrine of res ipsa loquitur. 164 Kan. at 733-34. In *Emigh*, the defendant's grain truck passed over the plaintiff's recently harvested wheat field and a fire erupted soon after. In arguing that the demurrer was properly sustained, the defendant contended, *inter alia*, that there was no allegation that the property was under the exclusive control of the defendant. The defendant contended the fire could have been started by someone who dropped a match or who left a smoldering cigarette in the field.

This court first discussed that the petition did not support the basic theory of negligence due to the fact that, by asserting the doctrine of res ipsa loquitur, the plaintiff had committed himself to the proposition that he could not identify the specific negligence. 164 Kan. at 734. As for the application of res ipsa loquitur to the case, this court observed that " 'it has no application to proximate cause and does not dispense with the requirement that the act or omission upon which defendant's liability is predicated be established as the proximate cause of the injury complained of. . . . [I]t does not permit an inference as to what act did produce

the injury.' " 164 Kan. at 735 (quoting 45 C.J. § 779 p. 1212). The *Emigh* court ultimately rejected the doctrine of res ipsa loquitur, noting that the petition raised merely a presumption as to the cause of the fire and that a "mere presumption cannot well be said to speak 'for itself.' " 164 Kan. at 736.

*Emigh* is not particularly helpful to the defendants in this case because the doctrine of res ipsa loquitur was never raised by Yount. Further, as will be discussed below, the present case contains more than a mere presumption regarding causation.

### Plaintiff's Burden of Proof

The question that underlies the causation issue here is this: How much evidence must a plaintiff present to allege an actionable basis for negligence? The district court and the Court of Appeals majority held Yount to a highly detailed burden of proof in this case. This high standard does not find support in either academic discussions of the burden or in Kansas case law. The burden of proof required of a plaintiff on the issue of causation is summarized in Prosser & Keeton on Torts § 41, pp. 269-70 (5th ed. 1984), as follows:

"The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn . . . .

"The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not [negate] entirely the possibility that the defendant's conduct was not a cause, and it is enough to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no one can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a partic-

ular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists."

The "substantial factor" test is also discussed in Restatement (Second) of Torts § 433B (Burden of Proof), Comments a and b (1965). Comment b points out that triers of fact are allowed to draw upon ordinary human experience with regard to the probabilities of the case. See also *Roberson v. Counselman*, 235 Kan. 1006, 1011, 686 P.2d 149 (1984) (discussing causation); *State v. Highway Comm. v. Empire Oil & Ref. Co.*, 141 Kan. 161, 165, 40 P.2d 355 (1935) (mentioning "substantial factor" in discussing legal cause); see generally 57A Am. Jur. 2d, Negligence §§ 453-504 (Tests of Proximate or Legal Cause).

Likewise, PIK Civ. 3d 106.01 (Issues and Burden of Proof— Plaintiff's Claim—Defendant's Defense) states, with regard to the plaintiff's burden of proof, that "the plaintiff has the burden to prove that it is more probably true than not that (he) (she) sustained (injuries) (damages) caused by any of the claimed negligent acts or omissions of the defendant. It is not necessary that each of you agree upon a specific negligent act or omission."

These learned references support the conclusion that the district court erred in requiring Yount to show which specific candle or specific flame caused the house fire. Additionally, Kansas case law supports this conclusion.

### American Family Mutual Ins. Co. v. Grim

The case which is most factually similar to this case and which discusses the causation issue is *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340, 440 P.2d 621 (1968). Although *Grim* ultimately applied joint and several liability principles, which are no longer generally applicable in Kansas, the causation analysis is instructive and remains good law. In *Grim*, the 13-year-old defendant and three companions were participating in a sleepover in the backyard of one of the boys. They walked down an alley and entered a church to obtain some soft drinks from the church's kitchen. Three of the boys made torches out of paper and lit them with matches. Two of the boys searched in the attic, and later the four boys made their way to the furnace room before exiting the

church through the sanctuary. The boys thought the torches were extinguished when they left the church. 201 Kan. at 342.

In the early morning hours after the escapade, the church was ablaze. Although the volunteer fire department could not determine the cause of the fire, the fire chief concluded the fire originated near the furnace room. The district court found the fire was caused by the lighting of torches in the attic and the boys' attempt to extinguish them. 201 Kan. at 343.

On appeal, one of the defendants argued that the district court's finding of causation was not supported by substantial competent evidence because "inferences different from that reached by the trial court might have been drawn from the evidence." 201 Kan. at 343. The defendant noted that other boys were seen later in the vicinity of the church and that an electric light in the east wing had a short-circuit in its wiring, both of which could have been possible causes of the fire. The *Grim* court rejected the defendant's contention and stated:

"The fallacy of defendant's argument is that in order for circumstantial evidence to be sufficient to sustain a finding in a civil case, such evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. [Citations omitted.] It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom." 201 Kan. at 343.

The court went on to say that although the fire chief did not give an opinion regarding causation, he placed the origin of the fire near the area where one of the torches was lighted and later extinguished. The *Grim* court held that, from the circumstances of the case, it was reasonable for the trial court to infer the fire was caused by one or both torches in the attic. 201 Kan. at 344.

In the present case, Yount argues that the circumstantial evidence of the defendants' playing with fire within the residence, which she characterizes as "negligent acts," showed overwhelming evidence of causation. The defendants admitted to lighting two or three small candles and as many as ten large candles inside the residence. At some point, the defendants lit several wooden matches on a plate in the living room; the flames got so hot that

the plate broke. The defendants also bundled five or six candles together inside the house, lit them on fire, and held them up at an angle; they also set fire to hairspray or alcohol in the living room area. Although the fire inspector did not specify a cause for the fire, he did isolate the origin to be the first floor living area. Similar to the situation in *Grim*, the evidence showed that the boys played with fire in the vicinity of the fire's origin. Even stronger than the circumstantial evidence in *Grim*, one of the defendants in this case reported to officers that one candle was still burning when the boys left the house.

Hence, in this case, although it cannot be said with absolute mathematical certainty that the defendants' activities caused the house fire, there certainly appears to be sufficient circumstantial evidence to create a question of fact concerning causation. In examining the record in the light most favorable to Yount, a factfinder could conclude that the defendants' actions more likely than not caused the fire. See *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990).

*Should the District Court Have Allowed the Case to Proceed Under a Theory of Joint Liability Pursuant to Restatement (Second) of Torts § 876 (1977)?*

With regard to comparative fault, Yount contends that the potential inability to identify which of the defendants should be liable, or the difficulty with apportioning liability, should not preclude her negligence claims. According to Yount, it is of no consequence that she cannot pinpoint which specific act by a specific defendant caused the blaze because that is a question of fact for a jury to determine. Although the district court based its summary judgment decision primarily on the causation issue, the court also expressed concern about the potential inability to apportion fault among the defendants. Yount contends the district court should have allowed the case to proceed under a theory of joint liability pursuant to Restatement (Second) of Torts § 876 (1977).

We agree that the potential difficulty with apportioning liability does not preclude Yount's claims, but we conclude that Restatement (Second) of Torts § 876 does not apply to this case.

Yount contends that Kansas has recognized joint liability when parties have acted in concert. Yount, however, seems to lose sight of the fact that Kansas uses the comparative fault system. She cites *Vetter v. Morgan*, 22 Kan. App. 2d 1, 913 P.2d 1200, *rev. denied* 257 Kan. 1096 (1995), where the driver and his passenger intentionally verbally assaulted and swerved toward the plaintiff, causing an accident. The Court of Appeals held that the passenger was liable for the driver's actions because the two were acting in concert pursuant to a common goal of harassing and frightening the victim and they acted together to accomplish that goal.

In finding the passenger liable, the panel cited Restatement (Second) of Torts § 876 (1977), which establishes rules for tort liability of persons acting in concert:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

"(a) does a tortious act in concert with the other or pursuant to a common design with him, or

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

"(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

The Court of Appeals observed that, under Kansas law, the above-quoted Restatement corresponds to the theories of civil conspiracy and aiding and abetting. 22 Kan. App. 2d at 8 (citing *Mays v. Ridenhour*, 248 Kan. 919, 936, 811 P.2d 1220 [1991]). Significantly, tortfeasors who act in concert "may all engage in some affirmative conduct relating to [the plaintiff's] injury, [but] the legal relationship which exists among them eliminates the possibility of comparing their conduct for purposes of apportioning liability." *Woods v. Cole*, 181 Ill. 2d 512, 520, 693 N.E.2d 333 (1998).

More recently, this court rejected a plaintiff's contention that joint liability should have been applied in a personal injury action against a third member of a hunting party and his parents. In *Cullip v. Domann*, 266 Kan. 550, 972 P.2d 776 (1999), the 14-year-old plaintiff and his two friends of the same age went hunting on property not owned by them. Defendant Domann carried a 12-gauge

shotgun, which accidentally discharged and struck the plaintiff, causing permanent paralysis. One of the arguments advanced by the plaintiff was that joint liability should apply to the hunting party under *Vetter*. The *Cullip* court determined that *Vetter* did not apply because, first, *Vetter* had nothing to do with joint venture or joint enterprise law. Second, *Vetter* established that persons acting in concert may be liable for injuries to third persons (as opposed to members of the same hunting party). The third reason *Vetter* did not apply was that the concerted action in *Vetter* was tortious. 266 Kan. at 559-60. Citing both *Vetter* and *American Family Mutual Ins. Co.*, this court held that neither of those decisions stood for the suggestion that individuals engaged in a concerted venture may be liable to other members of the venture solely because of the concerted action. 266 Kan. at 560.

Restatement (Second) of Torts § 875 is a specific application of the general rule of contributory negligence. Section 875 provides: "Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm." Comment b to Section 875 states that "[t]his section is concerned only with harm that is not divisible [and] liability is not apportioned." Thus, these Restatement provisions are directly applicable in jurisdictions where joint and several liability principles are recognized. See, *e.g.*, *Summers v. Tice*, 33 Cal. 2d 80, 84-85, 199 P.2d 1 (1948). Joint and several liability has been generally abolished in Kansas. See *Wood v. Groh*, 269 Kan. 420, 428, 7 P.3d 1163 (2000); see also PIK Civ. 3d 105.05 (stating in part that the jury "should weigh the respective contributions of the [persons] to the [occurrence in question] and considering the conduct of each as a whole, determine whether one made a larger contribution than the other[s]").

Since the adoption of comparative negligence in 1974, Kansas courts compare percentages of fault of all alleged wrongdoers. K.S.A. 60-258a. As stated in *Kennedy v. City of Sawyer*, 228 Kan. 439, Syl. ¶ 6, 618 P.2d 788 (1980): "[D]istinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation,

and the 'all or nothing' concepts are swept aside." Further, the Kansas statute requires the factfinder to determine the percentage of fault attributable to each defendant. K.S.A. 60-258a(b); *Sall v. T's, Inc.*, 281 Kan. 1355, 1375, 136 P.3d 471 (2006).

Although joint and several liability continues to apply in a few situations, for example, where created by the terms of a contract, note, or mortgage, see *Jenkins v. T.S.I. Holdings, Inc.*, 268 Kan. 623, 635, 1 P.3d 891 (2000), and in intentional tort actions, see *York v. InTrust Bank, N.A.*, 265 Kan. 271, 310-11, 962 P.2d 405 (1998), none of those circumstances apply to the present case. The application of Restatement (Second) of Torts § 876 in *Vetter* can be reconciled by the fact that the plaintiff in *Vetter* raised a negligence claim based on the unintended results of the defendant's intentional acts.

By adopting the comparative negligence statute, the Kansas Legislature intended to impose individual liability for negligent torts "based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages." 4 Gard & Casad, Kansas Law & Practice, Kan. C. Civ. Proc. Annot. § 60-258a, pp. 349-50 (4th ed. 2003); see *McGraw v. Sanders Co. Plumbing & Heating, Inc.*, 233 Kan. 766, 667 P.2d 289 (1983).

It will be the jury's duty to decide, based on the evidence presented at trial, the percentages of fault attributable to the parties. See PIK Civ. 3d 105.01; PIK Civ. 3d 105.05; see also Restatement (Second) of Torts § 433B(2) (where tortious conduct of two or more actors has combined to bring about harm to plaintiff, and one or more actor seeks to limit his or her liability on ground that harm is capable of apportionment, the burden of proof regarding apportionment is upon each such actor). The district court erred in granting summary judgment to the defendants.

The Court of Appeals' decision affirming the district court's granting of summary judgment is reversed. Judgment of the district court is reversed and the case is remanded for trial.

LUCKERT, J., not participating.

LOCKETT, J., Retired, assigned.[1]

---

[1] **REPORTER'S NOTE:** Justice Tyler C. Lockett, Retired, was appointed to hear case No. 93,726 vice Justice Luckert pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.