NOT DESIGNATED FOR PUBLICATION

No. 128,078

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GENEVA WALKER,
*Appellant*,

v.

JAZMINE PETERS,
*Defendant*,

and

WILLIAM WOODLEY and ROADRUNNER TEMPERATURE CONTROLLED, LLC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; LISA A. BERAN, judge. Oral argument held July 8, 2025. Opinion filed September 12, 2025. Affirmed.

*Jesse Tanksley*, of Mann Wyatt Tanksley, of Hutchinson, for appellant.

*John F. Wilcox Jr.* and *Meghan A. Litecky*, of Dysart Taylor McMonigle Brumitt & Wilcox, P.C., of Kansas City, Missouri, for appellees.

Before CLINE, P.J., MALONE and PICKERING, JJ.

CLINE, J.: This case arises from a traffic accident that occurred after Jazmine Peters and Geneva Walker drove off while a Kansas Highway Patrol trooper was searching their trunk during a traffic stop. The trooper gave chase and was joined by three other highway patrol officers. Peters eventually crossed the grassy median and both lanes of westbound I-70, driving into oncoming traffic. She lost control and the car spun back

1

towards the median, striking a westbound tractor-trailer driven by William Woodley. Walker sustained serious and significant injuries in the collision.

Walker sued Peters, Woodley, and Woodley's employer, Roadrunner Temperature Controlled, LLC, alleging Peters and Woodley were negligent and Roadrunner should be held vicariously liable for Woodley's negligence. Walker's truck driving expert, Lew Grill, claimed that Woodley should have pulled over or turned right instead of left to avoid a collision. Walker settled her claim with Peters, and the district court granted summary judgment to Woodley and Roadrunner.

After a careful review of the record, we see no error in the district court's decision. Although summary judgment is rarely granted in negligence cases, it is appropriate when a plaintiff fails to provide evidence of an element essential to their case. See *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 221, 262 P.3d 336 (2011). The court fairly concluded that Walker did not provide evidence that Woodley's action—in turning away from the vehicle careening all over the road towards him—was negligent or that Walker's damages were proximately caused by Woodley's evasive action. We therefore affirm its decision granting summary judgment to Woodley and Roadrunner.

### FACTUAL AND PROCEDURAL BACKGROUND

*A couple's vacation turns into a high-speed car chase.*

As Walker and Peters traveled back to Wichita from a vacation in Colorado, Trooper Cody Honas noticed the vehicle registration for Peters' rental car had expired. He pulled over the car and approached it from the driver's side, where he spoke to Peters. Honas smelled the odor of raw marijuana coming from inside the car, so he asked both women to exit the vehicle.

2

While Honas was asking for the car keys and looking around the car, Peters and Walker were standing beside the car talking. They signaled to each other to get back in the vehicle and came to an agreement to "flee together," as Peters later confirmed in her deposition. When Honas opened the trunk to search it, the women hopped back in the car and Peters then drove away with Walker in the passenger seat. Honas rushed back to his vehicle and pursued them down the highway.

The ensuing high-speed chase traversed three counties, often at speeds of more than 100 miles per hour. While Peters drove, Walker gathered bags of marijuana scattered throughout the car, so she could throw them out, and helped Peters evade law enforcement by telling her the location of the officers chasing them and the spikes thrown out to try to stop them. About 20 minutes into the chase, Peters crossed over the grass median of the I-70 highway into oncoming westbound traffic. Parts of her vehicle started to fly off as she swerved between the left and right lanes.

Woodley was driving his company tractor-trailer west on I-70 when Peters crossed into the westbound lane. The police dash camera video showed Peters enter Woodley's westbound lane, and six seconds later Woodley veered left to avoid a head-on collision, resulting in Peters' car colliding with his tractor-trailer. Walker suffered severe injuries from the accident.

*Woodley's version of the events*

Woodley had been a truck driver for over 40 years. At his deposition, Woodley said he was traveling 68 miles per hour before the accident because his truck is governed at that speed. After he crested a hill, Woodley could see a passenger vehicle with sparks flying off it, partly on the right-hand shoulder of the road and partly in his lane of traffic, with a highway patrol officer right behind it, going at a high speed. The next thing he knew, the car started spinning out of control, so he veered over to the left trying to hit the

3

median to get out of the way. When asked why he attempted to veer to the left, Woodley said, "Because they were on the right shoulder of the road. If I would've went to the right like probably I should have, I would have hit them head-on and killed everybody." He reiterated that he "was trying—I was trying to avoid their vehicles." Woodley said if he had to do it all over again he would "do the same thing" because it was a split-second decision and he did not "have time for anything else."

*Walker's expert and his opinions*

Walker retained an expert, Lew Grill, to testify about Woodley's reaction and the standard of care for commercial vehicle operators. To form his opinions about this case, Grill looked at the patrol report, trip documents, the dash camera videos from the police, Google Earth, and Google Maps. Grill did not reconstruct the accident and admitted he did not know the speed of Peters' vehicle in the 20 seconds before the accident or whether Woodley was braking before impact. He did not consider the behavior of Walker, Peters, or the highway patrol. He also did not visit the scene of the accident in forming his opinions, but he admitted he had driven through the area before. He did not speak to Peters, Walker, Woodley, or any of the law enforcement officers involved in the chase, and the only deposition transcript he reviewed was Woodley's (and this was after Grill issued his initial report).

Grill concluded the accident was preventable and opined that Woodley should have veered right instead of left. He admitted this opinion was "not based on the accident that, in fact, happened" but rather, it was based on a general rule in the Kansas commercial driver's license manual that the best course is always to steer to the right. Grill said this is because "[c]hances are nobody is using the shoulder of the road" and "most people when they cross over into a wrong lane will correct and come back to the left." But he acknowledged he was "not saying at all that you would be 100 percent successful by always steering to the right."

4

*The district court grants summary judgment for Woodley and Roadrunner.*

After Walker settled her claim against Peters, Woodley and Roadrunner moved for summary judgment on Walker's negligence claim. They also moved to exclude the testimony of Grill under K.S.A. 2023 Supp. 60-456, arguing his opinions lacked proper foundation, would not satisfy the *Daubert* standard, and should be inadmissible at trial. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). After a hearing, the district court entered a memorandum decision granting summary judgment to Woodley and Roadrunner, but did not decide their K.S.A. 60-456 motion.

In its ruling, the district court found Grill's testimony too speculative because he failed to consider crucial information, explaining:

"This collision did not occur in a vacuum and the actions of Woodley cannot be analyzed in a vacuum. Here we have a car that is, quite literally, all over the road. No one could assume what that car might do next, and the Court will not rely on a supposed 'industry standard' that is, at least in part, based on an assumption that the other driver will act in a reasonable manner. 'There is no evidence of anything [Woodley] did to cause the accident. And there is no conclusive evidence of anything [Woodley] could have done to avoid it.'

"Walker has failed to provide sufficient evidence that Woodley created a risk of harm to her or that he could have done anything to avoid her injuries. Woodley crested a hill and saw a driver's nightmare unfolding in front of him—an out-of-control vehicle speeding towards him going the wrong way. In the emergency, Woodley took actions that he thought were most likely to avoid certain death (which, by the way, Grill said was one of the exceptions to the 'industry standard').

"Walker has failed to 'present a genuine factual dispute.' Instead, she has offered 'mere speculation and conjecture about what [Woodley] possibly may have done.' The inferences she asks the Court to draw are unreasonable because they lack sufficient factual support. While the Court agrees that Grill would not have been in a position to offer an expert opinion as to the actions of others involved, the Court also thinks that we

cannot isolate Woodley's actions and completely disregard everything else going on in this scenario before us."

The district court also acknowledged Woodley and Roadrunner's alternative argument that Walker was liable for her own injuries on theories of failure to use due care, being in a joint enterprise with Peters, and criminal conspiracy. The district court did not rule on the joint enterprise issue, but it did find the criminal conspiracy rule applied because Peters and Walker conspired to violate the law and Walker was not an innocent passenger, which meant Peters' negligence was imputed to her. It concluded that "Walker's own actions and the imputed negligence of Peters were the proximate cause or legal cause of the accident and Walker's injuries."

REVIEW OF WALKER'S APPELLATE CHALLENGES

Walker asks us to reverse the district court's summary judgment decision and remand the case so a jury can decide whether Woodley was negligent. She contends Grill's opinions provide sufficient evidence that Woodley's evasive action both breached the standard of care he owed Walker and was the proximate cause of her injuries.

*Standard of Review*

Because this court is reviewing the same evidence and is in the same position as the district court when it decided the summary judgment motion, we apply the same standards on appeal that the district court applied:

> "A motion for summary judgment under the provisions of K.S.A. 60-256(c) is to be sustained only where the record conclusively shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering such a motion the movant's adversary is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. Where the facts presented in the motion are subject to conflicting interpretations or

6

reasonable persons might differ as to their significance, summary judgment is improper. It is only when it can be said that reasonable persons could reach but one conclusion from the same evidence that an issue may be decided as one of law. Summary judgment should never be granted merely because the court may believe movant will prevail if the action is tried on the merits." *Busch v. City of Augusta*, 9 Kan. App. 2d 119, Syl. ¶ 2, 674 P.2d 1054 (1983).

Admittedly, summary judgment is uncommon in negligence actions since they usually involve fact-intensive situations with conflicting viewpoints about what occurred. But it is proper if a plaintiff fails to establish a prima facie case demonstrating the existence of the four elements of negligence: "existence of a duty, a breach of that duty, an injury, and proximate cause." *Montgomery v. Saleh*, 311 Kan. 649, 653, 466 P.3d 902 (2020). Here, the underlying facts about what happened are not disputed. Instead, Walker disputes the district court's findings that she failed to show reasonable people could disagree about whether Woodley breached a duty of care to Walker and whether Walker's damages were proximately caused by Woodley's alleged breach.

I. *Did the district court err in finding that Walker failed to establish a breach of duty because her expert's opinion was too speculative?*

The district court concluded Woodley did nothing wrong because it found that Walker provided no evidence that Woodley caused the accident and no conclusive evidence that he could have done anything to avoid it. Walker disagrees, pointing to Grill's expert opinion that Woodley should have pulled over or veered right when he saw Peters and Walker's vehicle.

According to Grill, upon seeing the situation in front of him when he crested the hill, Woodley should have immediately slowed down, pulled his tractor-trailer onto the right shoulder, and brought it to a stop. Grill testified that a truck driver is supposed to keep a lookout 12 to 15 seconds ahead of their vehicle, and Woodley admitted in his

7

deposition that he was doing so before the accident. Grill said it would have taken Woodley roughly six seconds to stop, so he believes Woodley had more than adequate time to pull over onto the shoulder before the collision.

Woodley and Roadrunner, on the other hand, contend that Grill's opinions are unreliable since they ignore important facts from the accident and misapply the "industry standard" on which they are based. They also point out that Grill's opinions are rebutted by his own testimony.

Let us first look at the time frame Grill claims Woodley had to react. On the one hand, Grill claims Woodley theoretically had 12 to 15 seconds to react based on the general lookout rule. But he also admitted he was not claiming Woodley could discern the hazard approaching him within 12 to 15 seconds; that is, Woodley's brain would need some time to process the unexpected situation confronting him as he crested the hill. He admitted Woodley only had six to eight seconds to observe Walker's erratic driving and it would have taken him roughly six seconds to stop his tractor-trailer. He also acknowledged there was a pickup truck in front of Woodley that Woodley had to consider when deciding what to do. He failed to consider the actions of the other parties, including Peters, Walker, and the highway patrol troopers involved in the chase and did not reconstruct the accident or conduct any other scientific analysis. Last, Grill admitted he did not know the speed of Peters' vehicle in the 20 seconds before the accident or whether Woodley was braking before impact. These admissions and omissions raise serious doubt about the accuracy of Grill's opinion that Woodley would have had sufficient time to pull over.

Likewise, Grill admitted or ignored facts which undercut his opinion that Woodley should have pulled over onto the right shoulder of the road. For one, he admitted this opinion was partially based on the "chance" that "nobody is using the shoulder of the road." Yet he admitted Peters was driving in the left lane, right lane, and on the shoulder

8

in the seconds before the accident. So the right shoulder was not clear for Woodley to pull onto. And the Kansas Commercial Drivers License (CDL) Manual—a significant basis for Grill's opinions—states:

> "2.17.1–Steering to Avoid a Crash
> "Stopping is not always the safest thing to do in an emergency. When you don't have enough room to stop, you may have to steer away from what's ahead. Remember, you can almost always turn to miss an obstacle more quickly than you can stop. (However, top-heavy vehicles and tractors with multiple trailers may flip over.)"

Again, these facts are relevant to the reliability of Grill's opinions that Woodley could or should have pulled onto the shoulder when he saw Peters careening towards him.

Walker also submits Woodley compounded his "mistake" (i.e., not pulling over onto the right shoulder) by swerving to his left rather than to his right. Walker contends that Grill's testimony established Woodley should have veered right to avoid the collision, based both on the fact that professional drivers are trained to turn right—a fact Woodley admitted—and the fact that the accident happened in the left lane of the highway. Walker maintains that if Woodley had veered right, his tractor-trailer would not have been present in the left lane to collide with Peters' vehicle. But again, Grill's opinions ignore crucial information and rely on flawed logic.

Grill stated that commercial truckers like Woodley are trained to turn right instead of left when faced with an oncoming vehicle in their lane. While he admitted this maneuver "does not guarantee that the truck driver will be successful in avoiding a collision, . . . it is the best choice in the circumstances because it has the best chance of success." The Kansas CDL Manual states as follows on this point:

9

"Where to Steer.

- If an oncoming driver has drifted into your lane, a move to your right is best. If that driver realizes what has happened, the natural response will be to return to his or her own lane.
- If something is blocking your path, the best direction to steer will depend on the situation.
- If you have been using your mirrors, you'll know which lane is empty and can be safely used.
- If the shoulder is clear, going right may be best. No one is likely to be driving on the shoulder, but someone may be passing you on the left. You will know if you have been using your mirrors.
- If you are blocked on both sides, a move to the right may be best. At least you won't force anyone into an opposing traffic lane and a possible head-on collision."

As Woodley and Roadrunner point out, Peters did not simply "drift" into Woodley's lane. And this was not a momentary lapse caused by inattentive driving. Peters crossed the median of a divided highway and was erratically speeding against oncoming traffic for about two minutes before the accident.

Another problem with Grill's opinion is he admitted there are exceptions to the "general rule" to veer right when faced with an oncoming driver. For instance, the Kansas CDL Manual stated in the "Steering to Avoid a Crash" section: "When you don't have enough room to stop, you may have to steer away from what's ahead." And he acknowledged that an Arizona drivers manual said to steer away from the wrong-way driver on divided highways—like here—and a Nevada manual said that when you encounter a wrong-way driver coming towards you, after looking to avoid other vehicles next to you, to steer away from the wrong-way driver. Last, Grill admitted that 12 to 15 seconds before impact, Peters was moving back and forth between the right and left lanes and the shoulder, which Woodley and Roadrunner argue means Peters did not have an established lane of travel for Woodley to react to.

10

Perhaps most importantly, the district court pointed out the "industry standard" to veer right assumes different facts from the ones in the scenario Woodley was facing—a reasonable driver who is in control of their vehicle. Grill testified that his opinion was based on the concept that when an oncoming vehicle is approaching you in your lane of travel, "that vehicle is going to have the wantingness to go over to the right." He believed that Peters, despite having a blown out tire and sparks coming from her vehicle, "would be like anyone else in that it's a reasonable—to a reasonable degree of certainty to assume that she's not going to want to go head-on into [Woodley's tractor-trailer]." Yet one of the troopers reported that he observed Peters' vehicle lose control and begin a "sideways slide" directly into the path of the oncoming truck and Woodley's tractor-trailer. And Peters herself said she could not avoid colliding with the tractor-trailer because she had lost control of the vehicle by that time, either due to its flattened tire or the fact that she lost steering control. Peters said in the moments before the collision she and Walker knew they were going to hit Woodley's tractor-trailer because they could not do anything to avoid it. She said they gathered themselves and closed their eyes. In short, the main assumption for Grill's opinion has no basis in fact.

Grill admits his opinion was "not based on the accident that, in fact, happened." And Walker has failed to persuade us that expert opinions based on an incomplete investigation and faulty assumptions create a genuine issue of material fact or provide a reasonable basis for a jury to decide whether a duty was breached. Walker contends a reasonable jury could find Woodley should have played a game of chicken by steering directly towards an erratic driver who was careening towards him at 100 miles per hour and that he was negligent for failing to do so in the seconds he had to react to this "nightmare" scenario. We disagree.

"Kansas law does not presume negligence, nor does it allow negligence to be established by conjecture, surmise, or speculation. Negligence must be proved by substantial competent evidence." *Yount v. Deibert*, 282 Kan. 619, 624, 147 P.3d 1065

11

(2006). The district court did not err when it determined reasonable minds could not accept Grill's opinions as substantial competent evidence sufficient to establish a factual dispute over whether Woodley breached a duty of care to Walker. In such situations, "'it becomes the duty of the court to remove the issue from the jury.'" *Johnston, Administratrix v. Ecord*, 196 Kan. 521, 527, 412 P.2d 990 (1966).

II. *Did the district court err by concluding Walker failed to establish Woodley was the proximate cause of her damages?*

Walker also contends the district court erred in finding she failed to establish another element of her negligence claim—proximate cause. This element includes both factual and legal causation. Factual causation examines the cause and effect relationship between a negligent action and subsequent injury. That is, whether the defendant's action probably—not just possibly—contributed to the injury. *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008) ("Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience."). And legal causation examines the foreseeability of harm resulting from the action. *Burnette v. Eubanks*, 308 Kan. 838, 846, 425 P.3d 343 (2018). In other words, if an actor should have realized his action might cause harm to another, the resulting harm is the legal consequence of the actor's negligence. Proximate cause typically is a factual question resolved by a jury. It becomes a question of law, however, when all the evidence that a party relies on is undisputed and only one reasonable inference can be made. 308 Kan. at 846.

The district court found Walker did not prove a cause and effect relationship between Woodley's conduct or actions and her loss. It determined there was only one reasonable inference to be made from the evidence presented: Peters' actions leading up to the collision were the proximate cause of this accident. Alternatively, the district court found Walker and Peters engaged in a criminal conspiracy so Peters' negligence is

12

imputed to Walker, and "Walker's own actions and the imputed negligence of Peters were the proximate cause or legal cause of the accident and Walker's injuries."

In response, Walker argues that because Kansas uses comparative fault, summary judgment is not appropriate because a jury should apportion fault among all the actors here—including Woodley and the highway patrol officers. Additionally, Walker submits that the district court erred by finding Peters' negligence was imputed to Walker for criminal conspiracy because the court should have applied a joint enterprise analysis and found that the elements of joint enterprise are not met.

*Did the district court err in finding that Peters was the proximate cause of the collision?*

The district court found that Walker failed to provide sufficient evidence that Woodley created a risk of harm to her or that he could have done anything to avoid her injuries. But Walker argues she presented sufficient evidence that could lead a reasonable fact-finder to conclude Woodley's breach of the standard of care was a proximate cause of the accident.

As for causation in fact, Walker contends the evidence shows a cause and effect relationship between Woodley's failure to pull his truck to the shoulder and/or his decision to swerve left instead of right and the accident. She says if Woodley had pulled over or swerved right, he would not have been present in the passing lane to collide with the vehicle. And she argues Woodley should have foreseen that his actions might create a risk of harm when he disregarded his training to veer right.

To survive summary judgment on the proximate cause element of her claim, Walker was required to show, by direct or circumstantial evidence, that Woodley could have prevented the accident by veering right instead of left or that he had sufficient time

13

to pull over and stop to avoid it. Walker attempts to satisfy her burden with Grill's opinions. Yet his opinions provide neither a sufficient factual foundation nor a sufficient basis for a reasonable jury to find proximate cause, just like they fail to provide an adequate basis for a jury to find Woodley breached a duty of care.

Walker also jumps to the conclusion that simply because the accident happened in the left lane, this means Woodley's actions caused the collision. But the facts do not support this logical leap. Under the circumstances, the location of the collision itself is not conclusive evidence that the collision would not have occurred if Woodley had steered right. Even Grill does not conclude that turning right would have avoided the accident—he says it had the "best chance of success." And, again, Grill's opinion on whether Woodley could have avoided the accident by veering right is pure speculation. It is not based on any accident reconstruction or the "accident that, in fact, happened," nor is it based on the speed of Peters' vehicle or whether Woodley was braking before the collision. Even if Woodley had steered right, Walker provides no evidence that Woodley had enough time to sufficiently maneuver his tractor-trailer away from Peters and Walker's vehicle to avoid a collision, either head-on or a sideswipe.

The district court compared Grill's opinions to the expert opinion in *Sanchez v. Robert Heath Trucking, Inc.*, No. 123,909, 2022 WL 817513 (Kan. App. 2022) (unpublished opinion), noting how both Grill and the expert in *Sanchez* neglected to fully appreciate the underlying circumstances of the accidents at issue. In *Sanchez*, the parents of Jose Montes, who was killed in a motor vehicle accident while walking on Interstate 35 highway, sued the truck driver who struck Montes and his employer for negligence. 2022 WL 817513, at *1. Montes was hit by a semi tractor-trailer while walking on the interstate around 2 a.m. When Montes was hit, he had no phone, shirt, pants, or shoes. A toxicology analysis revealed Montes had THC and LSD in his system, which suggested he was impaired at the time of his death. 2022 WL 817513, at *1.

14

Right after the accident, the truck driver spoke with the police. He said he was driving down the outside lane of the interstate and looked behind him because he thought another semi was passing him. Once he looked back to the road, he saw Montes standing in front of him. So he "'yanked'" the wheel to the inside lane to avoid a collision, but he said Montes moved in the same direction and they collided. 2022 WL 817513, at *1.

The truck driver and his employer successfully moved for summary judgment. 2022 WL 817513, at *2. Essentially, the parents' expert opined that the truck driver should have seen Montes earlier before the accident and if he did he would have been able to slow down. But the district court found Montes' own actions were the proximate or legal cause of the accident. 2022 WL 817513, at *2. More specifically, the district court noted Montes was in the middle of the interstate with LSD and THC in his system and the parents failed to establish that the truck driver could have reasonably avoided the accident. 2022 WL 817513, at *1.

We affirmed the district court's decision on appeal. We agreed the *Sanchez* expert's opinion was too speculative to establish a genuine issue of material fact because the expert ignored crucial information like the actions of Montes and the driver and there was no evidence the driver had time to perceive and react to Montes. 2022 WL 817513, at *5.

Walker tries to distinguish *Sanchez* by arguing Grill had more information upon which to base his opinions. She argues that, unlike *Sanchez*, her accident did not happen in the middle of the night, there is a video showing exactly what happened, there is video showing when Woodley's vehicle came into the frame, and there is expert testimony stating Woodley could have steered right to avoid the accident. Thus, when the facts are viewed in a light most favorable to Walker, she claims a reasonable juror could conclude that while Woodley's actions may not have been the only cause of the accident, his actions were a proximate and contributing cause. So the jury should be allowed to

15

determine fault under K.S.A. 60-258a, and summary judgment should not have been granted.

But just because Grill had more information than the expert in *Sanchez* does not mean his opinion provided a reasonable basis for a jury to find Woodley's actions proximately caused Walker's injuries. Like the expert in *Sanchez*, Grill ignored crucial information and failed to determine relevant facts (like the speed of Peters' vehicle and her ability to control it). And he ignored recognized exceptions to and a critical basis for the "industry standard" he relied on.

Walker has not shown a reasonable person would not have made the same choice as Woodley when confronted with the same emergency. *Ecord*, 196 Kan. at 528 ("Negligence is the lack of ordinary care. It is the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing."). Woodley chose what he thought was the better of the two horrible options in front of him—steer right and into the vehicle careening towards him or steer left to try to avoid a head-on collision. While, in hindsight, and assuming many variables which are not necessarily supported by the facts of this situation, steering right might possibly have achieved a better outcome, even Grill did not testify that steering right would have avoided the accident. He simply speculated the odds were more likely that this would be true. Yet when a negligent action merely creates a condition that makes an injury *possible*, that action cannot be the proximate cause of the resulting injury. Instead, proximate cause requires the action to be the *probable* cause of the injury. See *Hale*, 287 Kan. at 322 ("Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience.").

We agree with the district court's view that there is only one reasonable inference to be made from the evidence presented here: Woodley's actions were not the proximate cause of the collision.

*Did the district court err by finding Peters and Walker engaged in a criminal conspiracy rather than using the joint enterprise test?*

The district court also entered summary judgment for Woodley and Roadrunner on their alternative theory that Walker was liable for her own injuries because she was engaged in a criminal conspiracy with Peters and thus Peters' negligence should be imputed to Walker. Walker contends the court erred because imputing fault under a criminal conspiracy theory, as the district court did here, was based on a Kansas Federal District Court decision, *Hernandez-Cortez v. Hernandez*, No. Civ. A. 01-1241-JTM, 2003 WL 22519678 (D. Kan. 2003) (unpublished opinion), which is contrary to Kansas law and public policy. She claims that Kansas moved away from joint and several liability when it adopted comparative negligence, and it only applies in limited cases—none of which she claims are present here.

Walker correctly points out that Kansas courts generally analyze whether a driver's fault may be imputed to a passenger by analyzing whether the passenger and driver were in a "joint enterprise." But we need not address whether the district court's imputation of Peters' liability to Walker under a criminal conspiracy was error because it was an alternative basis for the court's decision. Regardless of whether Peters' liability was imputed to Walker, the district court found that Walker "failed to provide sufficient evidence that Woodley created a risk of harm to her or that he could have done anything to avoid her injuries." Since, as explained above, we see no error in this finding, Walker has failed to establish a prima facie case demonstrating the existence of all four elements of negligence. *Montgomery*, 311 Kan. at 653. As such, summary judgment was appropriately entered on her negligence claim without relying on this alternative theory.

17

Under this record, we find no question of fact for the jury to determine. And we find the uncontroverted facts are insufficient as a matter of law to hold Woodley liable for his evasive action. Thus, the district court's decision granting summary judgment for Woodley and Roadrunner is affirmed.

Affirmed.